Dear Senator Smith:
This letter is in response to your question asking whether participation by a milk processor or distributor or milk product purchaser in a vendor support program, which you describe, is in violation of § 416.410 et seq. RSMo.
It is understood by this office that a vendor support program typically involves funds made available for advertising purposes to a retail seller of goods by a manufacturer or distributor thereof. The amount of such funds is generally a fixed percentage of gross receipts, and the vendor may require a financial contribution by the retailer in an advertising program which it sponsors.
The vendor support program referred to in your letter appears to differ from the typical program as follows:
1. A third-party organizer contacts a retailer and requests a list of its principal vendors and the dollar volume of business transacted therewith. If the dollar volume of a particular product exceeds a threshold amount, generally $30,000 annually, the retailer is considered eligible for the vendor support program.
2. The organizer then prepares a videotape presentation of a proposal for a special advertising promotion of the vendor's product. The videotape is forwarded to the vendor together with a request for a specific contribution of funds needed for the promotion. The funds requested are supplemental to the usual percentage advertising allowance. Ordinarily, submission of the videotape to a vendor is followed by one or more meetings between the vendor and retailer to plan the advertising program.
3. In conformity with Federal Trade Commission requirements, a vendor who agrees to support the special advertising program agrees also to make available advertising contributions to all of the retailers of its product in the relevant market area. However, the third-party organizer will prepare an advertising program proposal only for retailers having the requisite dollar volume.
4. In addition to financial contributions, vendors frequently furnish advertising materials and place sales representatives in stores during the special promotions.
5. The vendor funds contributed to a retailer advertising program are typically expended for preparing and broadcasting television and radio advertisements, newspaper and billboard advertisements, or any combination thereof that is deemed to have the optimum sales promotion effect for a particular retail business in its market area. The size and effect of the special advertising promotion thus depends on the size and scale of business of the individual retailer. The most important accounts will be those companies having multiple retail outlets.
Section 416.440, RSMo 1978, provides, in pertinent part:
 1. No milk processor or distributor shall, with the intent or with the effect of unfairly diverting trade from a competitor, or otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, give or offer to give any milk product purchaser any rebate, discount, free service or services, advertising allowance, pay for advertising space used jointly, donation, free merchandise, rent on space used by the retailer for storing or displaying the milk processor's or distributor's merchandise, financial aid, free equipment, or any other thing of value; except the bona fide return by a cooperative association to its members on a patronage basis of the savings realized on products sold and distributed to the members or patrons.
* * *
 3. No milk product purchaser shall accept from any milk processor or distributor any rebate, discount, free service or services, any advertising allowance, pay for advertising space used jointly, donation, free merchandise, rent on space used by retailer for storing or displaying the milk processor's or distributor's merchandise, financial aid, free equipment, or any other thing of value; except the bona fide receipt from a cooperative association of a patronage refund based on the patronage of the purchaser with the cooperative association.
Section 416.440.1 makes the giving of a donation or an advertising allowance by a milk processor or distributor to a milk retailer, a violation of the Act, if it is done with the intent or effect of unfairly diverting trade from a competitor, or otherwise injures a competitor. The principal purpose of the above-described vendor support program, is to induce milk processors and distributors to contribute funds to milk retailers for advertising purposes. It is immaterial whether such contributions are classified as "donations" or "advertising allowances," because they are direct payments by a milk vendor to a milk retailer. None of the reasoning contained in recent case law involving the giving of indirect advantages to a retailer [Fleming Foods of Missouri, Inc. v. Runyon [Runyan],634 S.W.2d 183 (Mo. banc 1982)] is required to reach the conclusion that the payments applicable to a vendor support program are of the type proscribed by § 416.440(1) as to processors and distributors, and of the type, receipt of which by a retailer is proscribed by § 416.440(3).
Such payments, however, violate the statute only if they are made with the intent, or have the effect of unfairly diverting trade from a competitor, or otherwise injure a competitor, destroy competition, or create a monopoly. Section416.440(1). In general, resolution of the issues of intent and effect is dependent upon the facts and circumstances of the individual case. Borden Company v. Thomason, 353 S.W.2d 735,754; (Mo. banc 1962) State ex rel. Davis v. Thrifty Foodliner,Inc., 432 S.W.2d 287, 290 (Mo. 1968). The fact situations described in the cases decided under this Chapter illustrate this principle.
In Fleming Foods of Missouri, Inc. v. Runyon [Runyan], supra,
the court found that a systematic program of aid pursuant to a franchising arrangement, and involving preferential loans, leases and equipment sales, even though not directly related to milk products, still resulted in a "competitive edge . . . [which] . . . would carry into the direct sale of milk products. . . . The giving of such services and things of value is clearly intended to and would have the effect of diverting trade from competing distributors in the field of milk and milk product sales." Id. at 193.
However, in the case of State ex rel Thomason v. AdamsDairy Company, 379 S.W.2d 553 (Mo. 1964), a dairy furnished milk to a retailer to be given away free to the public. The court found no violation of the act because the giveaway was promotional in nature, lasted only a few days, and resulted in capture of less than 3% of business in the relevant market area.
Similarly, in State ex rel. Davis v. Thrifty Foodliner,Inc., supra, a retailer sold milk at below cost in a "loss leader" sales format as part of a promotional sales program. The court found no evidence of any injury to competitors, and held that the loss leader practice was not contrary to the public policy of Missouri. Id. at 291.
The vendor support program outlined in your letter is of limited duration, and it appears to contain elements promotional in nature. There are some factual similarities to the Adams
and Thrifty Foodliner cases. Correspondingly, there is no long term comprehensive program of indirect economic advantages extended to milk retailers, such as was found to violate the Act in Fleming. The possible impact a vendor support program may have on competition in any particular market area is conjectural and it would be inappropriate for this office to speculate on or assume a factual context not in existence. In any event, the question of effect or intent in regard to diverting trade or injuring competition is one of fact and must be decided by the courts.
In making such factual determination, however, a court may be guided by the rulings in Adams, supra, and ThriftyFoodliner, supra, which emphasized that "increasing one's sales of milk is not `in and of itself' illegal unless the intent or effect is not merely to divert trade but to unfairly
divert such trade." State ex rel. Davis v. Thrifty Foodliner,supra, at 291. The vendor support program as developed by an organizer, would exclude all retailers not meeting a requisite dollar volume in milk products. Funds would be offered to such competitors, but not the entire program, i.e., video tape presentation. This could be interpreted, and a court may so find, that such exclusion constitutes a discriminatory gift that works an unfairness upon the excluded parties. ForemostDairies, Inc. v. Thomason, 384 S.W.2d 651, 660 (Mo. en banc 1964).
It has been noted also that the vendor funds would pay the cost of television, radio and newspaper advertisements. These costs may be divided separately into the costs of producing the advertisement, and the sum of unit costs of the respective television, radio or newspaper spot ads. As between competitors, the cost of producing an advertisement may be equal, but the party having the larger budget (based on sales volume) could afford more showings of the advertisement, thus discriminating against, and working an unfairness on the party having the smaller budget. If this is done with the requisite intent, or has the effect of diverting trade, a violation of the Act would exist.
In response to your query as to which milk products are affected by the Act, please note the 1982 amendment to § 416.410
deletes cottage cheese and now defines "milk product" only as the various forms of fluid milk products therein listed. Section416.410 RSMo Supp. 1984.
We conclude that a milk vendor support program as described would be in violation of § 416.440.1 and § 416.440.3 if its exclusion of some competitors from the benefits of the entire program works an unfairness as to the excluded parties, and, if the program results, in fact, in a diversion in trade from other competitors or otherwise injures such other competitors.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General