The STATE of Missouri, at the relation of Don THOMASON, Commissioner of Agriculture, Appellant,

v.

ADAMS DAIRY COMPANY, a Corporation, Respondent.

No. 50169.

Supreme Court of Missouri,

Division No. 1.

May 11, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied and Opinion Modified on Court's Own Motion June 8, 1964.

Thomas F. Eagleton, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for appellant.

Hillix, Hall, Hasburgh, Brown & Hoffhaus, Charles E. Hoffhaus, Kansas City, Donnelly & Donnelly, David Donnelly, Lebanon, for respondent.

COIL, Commissioner.

Don Thomason as the State Commissioner of Agriculture brought suit to enjoin respondent, Adams Dairy Company, a corporation, from allegedly violating Section 416.-440 (all section citations herein refer to sections of RSMo 1959 and V.A.M.S.) of the Unfair Milk Sales Practices Law, Sections 416.410–416.560, by giving milk to persons "with the intent and with the effect of unfairly diverting trade from a competitor or of otherwise injuring a competitor or of destroying competition, or of creating a monopoly."

The court made separate findings of fact and conclusions of law and entered a judgment denying the commissioner's request for a permanent injunction and dismissing his petition. The commissioner has appealed from that judgment and contends the trial chancellor erred in finding that re-

spondent's acts alleged to have constituted a violation of the section in question were not done with the intent and did not have the effect of unfairly diverting trade from a competitor.

We have jurisdiction because a state officer as such is a party. Article V, Section 3, Missouri Constitution, V.A.M.S.

The evidence consisted of stipulated facts and the testimony of one of respondent's vice-presidents. The agreed facts show that on February 16, 17, and 18, 1962, respondent, through agents stationed at the front entrance of a supermarket in Lebanon, handed coupons to persons entering the store which entitled each of them to a one-half gallon carton of Adams homogenized milk without charge. The agents were authorized by respondent to give coupons to the first 2,500 persons entering the store on the 16th and 17th and to the first 1,000 on the 18th. Cartons of milk given to customers as the result of the distribution of the coupons did not exceed 1,500 on the 16th, 2,300 on the 17th, and 1,000 on the 18th. The coupons were distributed and the milk given by respondent as part of an "introductory sales promotion of Adams labeled dairy products" in the Lebanon area. No Adams labeled products ever had been sold in that area prior to three or four weeks before February 16, 1962. It was agreed that some of the people to whom the coupons and the ½-gallon cartons of milk were given had theretofore purchased milk products from retail outlets in Lebanon. Adams processed milk and milk products at a division of its company known as Cloverleaf Dairy in Springfield. Those products had been sold in Lebanon (under the Cloverleaf label) for several weeks prior to the time that any Adams labeled products were sold there.

It was conceded that Adams had theretofore engaged in similar introductory sales promotion projects at other places and intended to engage in others in the future.

Mr. Frye, respondent's vice-president, experienced in the dairy business and who had been in the Springfield area for periods during approximately five years, testified that it was a usual and common practice in the dairy industry in Missouri for dairies, including Adams, when they entered a new area to "engage in a promotion of its products" for the purpose of acquainting prospective customers with their products and with the "superior qualities" of those products. He said the promotional effort was a "one-time" affair, i. e., after two or three days it was to and did end.

As a result of a study Mr. Frye had made of milk consumption in the Lebanon area for the year 1962, he knew that at trial time (December 17, 1962) Adams labeled milk constituted between 1½ and 2 per cent of the milk consumed in that area; that the Cloverleaf division sold not to exceed three per cent of the milk so consumed; and that some of the persons who consumed the 1½ to 2 per cent of Adams labeled milk were buyers who formerly bought Cloverleaf labeled products; that Adams thought that by getting customers acquainted with its products, Adams would sell more; that some of the milk Adams sold in the area by trial time was sold to persons who were former customers of competing companies. The competing companies in Lebanon were Hiland, Tastemark, Foremost, and Pevely. Those dairies had been selling in the Lebanon area for "quite awhile."

As noted, the section of the law alleged to have been violated is 416.440 which, in pertinent parts, provides:

"1. No milk processor or distributor shall, with the intent or with the effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, give or offer to give any milk product purchaser any rebate, discount, free service or services, advertising allowance, pay for advertising space used jointly, donation, free merchandise, rent

on space used by the retailer for storing or displaying the milk processor's or distributor's merchandise, financial aid, free equipment, or any other thing of value; except the *bona fide* return by a cooperative association to its members on a patronage basis of the savings realized on products sold and distributed to the members or patrons.

"2. Proof of the giving or offer to give anything of value is *prima facie* evidence of a violation of this section. * * *

"5. This section does not prevent a processor or distributor from furnishing point-of-sale advertising material to a retailer without cost for the promotion of the sale of the processor's or distributor's products.

"6. This section does not prevent a discount of two per cent or less for payment on or before a certain date."

So much of paragraph 1 above as is specifically pertinent here is, "No milk processor or distributor shall, with the intent or with the effect of unfairly diverting trade from a competitor, * * * give * * * any milk product purchaser * * * free merchandise * * *." As noted, paragraph 2 of the section provides that proof of giving free merchandise is *prima facie* evidence of a violation of the section. Appellant makes no contention, and there is no evidence, that respondent's giving the milk in question tended to destroy competition, create a monopoly, or injure a competitor, other than, as contended, by unfairly diverting trade. Consequently, the question is a narrow one. Did the Commissioner of Agriculture sustain his burden to prove that respondent gave away milk in the manner aforedescribed with the intent or with the effect of *unfairly* diverting trade from a competitor?

■ The provision in paragraph 2 that proof of giving milk is *prima facie* evidence of a violation of the section is

a rule of evidence which may affect the burden of evidence but does not affect or change the burden of proof. In this case the burden of proof, including the risk of nonpersuasion, remained throughout on the commissioner who charged that respondent violated the provisions of the section of the law in question. City of St. Louis v. Cook, 359 Mo. 270, 221 S.W.2d 468, 469. The question is whether appellant has sustained his burden to prove the violation as charged, upon a consideration of all the evidence.

■ It seems to be appellant's position that any act, otherwise prohibited by Section 416.440 and not specifically excepted or permitted by that section, is an act done with the intent and with the effect of unfairly diverting trade ˙from a competitor. In that connection, appellant points to paragraphs 5 and 6 of Section 416.440 set forth above which provide, respectively, that nothing in the section shall prevent a processor or distributor from furnishing certain advertising without cost or prevent a maximum discount of two per cent for prompt payment. As we understand, appellant means that an act of competition is intended to be and is "unfair" if it is any act other than those mentioned in paragraphs 5 and 6. If that argument is valid, no possible reason exists for the inclusion by the legislature of the requirement of Section 416.440 that the giveaways (and other acts) prohibited are only those done with the intent or the effect of unfairly diverting trade. In other words, according to appellant, there was no reason to include in paragraph 1 of Section 416.440 the elements of unfair intent and unfair effect. It seems to us that the legislature easily could have provided, and if it so intended, would have provided in plain English that the giving to a milk products purchaser any merchandise constituted an unfair diversion of trade, except furnishing certain free advertising and giving a discount for cash. The state's argument appears to us to overlook the fact that, according to the explicit

language of the section in question, giving away milk is not illegal (a violation of the act) unless it is done with the intent or with the effect of unfairly diverting trade from a competitor.

In Borden Company v. Thomason, Mo., 353 S.W.2d 735, 754[15], this court en banc said: "Whether an act is committed with the intent or with the effect of 'unfairly diverting trade from a competitor', the court is of course competent to decide and to give a reasonable definition and construction of the words used when a proper case is presented. Whether or not a sale below cost has unfairly diverted trade is a matter of proof in each instance and must depend on the facts and circumstances shown. The provision is subject to a reasonable interpretation." The court was there dealing with Section 416.415, but the holding is, of course, apposite to Section 416.440 here in question.

All the evidence in this case showed that respondent gave cartons of milk to prospective customers in order to acquaint those persons with recently introduced Adams labeled products in the hope that those consumers would thereafter buy those products; that the giveaway program was a 3-day "one-time" promotional effort carried on in accordance with usual and common practice in the dairy industry when a new label on milk products is being introduced in a city and area; that the promotional effort resulted in Adams labeled products being less than two per cent of the total milk consumed in the area as of some ten months later, and a portion of that small percentage resulted from milk users who had theretofore purchased Adams products under the Cloverleaf label buying products under the Adams label; that there were four competing dairies, and there was no evidence that all four were not "large" as opposed to "small individually operated dairies."

The trial court in this case made a specific finding that the sales promotion as shown by the evidence "was not carried on with the intent of, and did not have the effect of unfairly diverting trade from a competitor." We reach the same conclusion upon an independent review of the record. The evidence shows only a recognized and frequently used practice in the dairy industry, which had a legitimate business purpose and which has never heretofore been considered as against public policy or as characterized by deception, bad faith or fraud, and which did not in fact result in any substantial diversion of trade. Upon this record the conclusion is required that respondent, in conducting its promotional program involving giving milk to users, did not intend or have the effect of unfairly diverting trade from a competitor. See Mott's Super Markets, Inc. v. Frassinelli, Conn., 172 A.2d 381, 386, 172 A.2d 381; Wiley v. Sampson-Ripley Co., 151 Me. 400, 120 A.2d 289, 291[4]. (The court en banc in the Borden case, supra, refused to follow the Mott and Wiley cases in so far as those cases held the *"prima facie"* portions of the respective acts unconstitutional; but the holdings of those cases which support our conclusion herein are in accord with the court en banc's holding in the Borden case.)

It follows that the judgment should be affirmed. In view of our conclusion in that respect, it will be unnecessary to discuss, and we hereby overrule respondent's motion to dismiss.

Judgment affirmed.

HOUSER, C., concurs.

WELBORN, C., concurs in result.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.