STATE of Missouri ex rel. Dexter D. DAVIS, Commissioner of Agriculture, Plaintiff-Appellant,

v.

THRIFTY FOODLINER, INC., Defendant-Respondent.

No. 53073.

Supreme Court of Missouri, Division No. 2.

Oct. 14, 1968.

Norman H. Anderson, Atty. Gen., L. J. Gardner, Asst. Atty. Gen., Jefferson City, T. E. Lauer, Columbia, for appellant.

John R. Lewis, Kirby, Millsap & Lewis, Springfield, E. J. Ball, Fayetteville, Ark., for respondent.

HARRY M. JAMES, Special Judge.

The Commissioner of Agriculture, charged with the enforcement of the Unfair Milk Sales Practices Act (Sections 416.410–416.560, RSMo, V.A.M.S.), brought this suit to enjoin Thrifty Foodliner, Inc., a nonprocessing retailer for allegedly violating Section 416.425 by advertising, offering for sale and selling milk for less than cost at its retail grocery stores in Springfield, Missouri. A trial resulted in a finding and judgment denying a permanent injunction and dismissing the petition. This appeal followed. We have jurisdiction because a state officer as such is a party. Article V, Section 3, Constitution of Missouri, V.A.M.S.

On November 16, 1966, respondent completed the purchase of two retail groceries in Springfield theretofore operated as So Lo Markets. One of these stores (Brentwood) was virtually bankrupt. Prior to November 16, respondent had operated only two other retail grocery stores, both in

Springfield, doing business as IGA Food-liners. A private label brand of milk known as College Club had been sold in Springfield only at respondent's two stores.

In conjunction with the "grand opening" of its two newly acquired stores, respondent placed a two-page advertisement in the November 17, 1966 evening edition of the Springfield Leader-Press in which one of the advertised items "effective through November 20, 1966" at all four stores was "our own fresh milk, full gal. 69¢". The milk referred to, although not by name, was the College Club brand. When it became apparent, late in the morning of November 17, that College Club milk was not moving as expected in the Brentwood store, respondent placed a large sign in the window of that store with the words "Milk—College Club—Double Your Money Back Guarantee. Full gal. or two ½ gal. 65¢". The Trial Court found that this sign remained in the window until Saturday evening, November 19, 1966.

During the period of time involved in this action, the invoice cost of College Club milk delivered to defendant in Springfield was 62¢ per gallon carton and 33¢ per half gallon carton. However, the "cost to the retailer" as that term is defined in the Statute, Section 416.410 ("the invoice cost price paid by the retailer plus the retailer's cost of doing business") was in excess of 69¢ per gallon whether sold in gallon or half gallon cartons.

Within hours after respondent offered its College Club milk for sale at less than "cost to the retailer", at least some of the major wholesale distributors of other brands of milk reduced their prices to all retail stores in Springfield, and at least some of the other retail grocers met respondent's milk prices.

The section of the Statute respondent was charged with violating, Section 416.425, provides:

"1. No nonprocessing retailer shall, with the intent or with the effect of un-fairly diverting trade from a competitor, or otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, advertise, offer to sell or sell within the state of Missouri, any milk product for less than cost to the retailer.

"2. Proof of the advertising, offer to sell or sale of milk products by a non-processing retailer is prima facie evidence of a violation of this section."

The Trial Court found, on the basis of substantial evidence, that respondent "in the ordinary course of its business, intended to familiarize customers with College Club milk in and as part of the formal opening of its two new stores by the 4-day reduced price on this milk and ceased its introductory activity on November 20 and then raised its prices on November 21 * * * The action was temporary and intended as such."

Here, as in State ex rel. Thomason v. Adams Dairy Company, Mo., 379 S.W.2d 553, appellant makes no contention and there is no evidence, that respondent's sales below "cost to the retailer" tended to destroy competition, create a monopoly or injure a competitor, other than by unfairly diverting trade from competitors. The evidence discloses there are over three hundred retail grocers, including twenty-four supermarkets, selling milk in Springfield. Apparently, respondent's stores are considered "superettes", as distinguished from the larger supermarkets. How many of the three hundred other retailers are actually competitors of respondent's two older stores, or even of the two newly acquired ones, is not disclosed by the evidence. There is likewise no evidence relating to the volume of College Club milk sales either before, during or after the 4-day period or what percentage of the total milk sales in Springfield were College Club. The inference is clear that College Club milk was virtually unknown to most milk users in Springfield. In any event, under the record in this case, we are not persuaded that respondent's "one-

time promotional effort" was either intended to or had the effect of creating a monopoly, destroying competition or injuring competitors. Rare indeed would be the situation where an ordinary grocer, as distinguished from a major chain of supermarkets, would, at least without the active illegal aid of a processor or distributor, over an extended period of time, intend to create a monopoly much less succeed in monopolizing the sale of fresh milk products or destroying competition therein.

■ The major thrust of appellant's argument in his brief in chief is that once he has shown that respondent, a non-processing retailer, advertised and sold milk at a price below its cost to such retailer, he is entitled to the mandatory entry of judgment granting injunctive relief unless respondent overcomes the "almost insuperable burden" of demonstrating the absence of the requisite evil intent as well as the predatory effect of its conduct. In this connection, appellant relies on subsection 2 of Section 416.425, referred to in Borden Company v. Thomason, Mo., 353 S.W.2d 735, 756, as " 'the defective evidentiary rule for non-processing retailers (grocers)' ". Assuming that this subsection is not "fatally defective by reason of its failure to directly describe such sales as sales 'for less than costs to the retailer' ", its only purpose is to make the proof of sales below cost to the retailer prima facie *evidence* of a violation of the section. Whether or not advertising or selling milk below cost is done with the intent or has resulted in unfairly diverting trade from a competitor "is a matter of proof in each instance and must depend on the facts and circumstances shown. The provision is subject to a reasonable interpretation", Borden Company v. Thomason, supra, 353 S.W.2d 735, 754.

■ The inference created by subsection 2 that respondent violated Section 416.425 is not at all conclusive. It is simply a rule of evidence which neither affects nor changes the burden of proof. The ultimate burden of persuasion upon all the facts, "including the risk of non-persuasion, remained throughout on the commissioner who charged that respondent violated the provisions of the section of the law in question". State ex rel. Thomason v. Adams Dairy Company, supra, 379 S.W.2d 553, 555.

Hence, similarly to Adams, the meritorious question here is a narrow one: Upon a consideration of all the evidence, did the commissioner sustain his burden to prove that in advertising and selling milk below "cost to the retailer", respondent did so with the intent or with the effect of unfairly diverting trade from a competitor or otherwise injuring a competitor?

The Trial Court specifically found that respondent's conduct did not unfairly divert trade from or otherwise injure any competitor. He further found that "even though College Club milk had been sold in defendant's two old stores (and hence was not introductory to them) * * * the selling and advertising of milk at the reduced price in those stores was a reasonable procedure (in connection with introducing College Club milk to the two *new* stores) to avoid misleading consumers and to protect defendant from complaints by customers seeking to buy at the reduced price at the old stores upon seeing that defendant's two new stores were selling at the reduced price. Defendant's acts may have attracted some customers away from the competing stores, but this does not show any more than an intent or effect of attracting *immediate* patronage to the store in the ordinary course of business with the hope of selling the milk and also other items." In this connection, the evidence discloses, rather convincingly, that the use of "leaders" and "loss leaders" by retail grocers, both generally in Missouri and in the Springfield area, is a recognized, frequently used and ordinary practice to attract customers into their stores. This practice has never heretofore

been considered against the public policy of Missouri.

■ After first equating respondent's intent to increase the sales of its College Club milk with an intent to divert trade from its competitors, appellant then argues that "the intent to divert competition through advertising, offering and selling milk below cost is in and of itself unfair". This boot-strap argument ignores the explicit language of the statute. The sale of milk below cost to the retailer, whether or not accompanied with an intent or with the effect of increasing one's sales of milk is not "in and of itself" illegal unless the intent or effect is not merely to divert trade but to *unfairly* divert such trade. Cf. State ex rel. Thomason v. Adams Dairy Company, supra, 379 S.W.2d 553, 555.

■ Since the submission of this case, appellant has cited us to the recent decision of the United States Court of Appeals for the Eighth Circuit in Dean Foods Company, Inc. v. Albrecht Dairy Company, 396 F.2d 652, which sustained a treble damage award in an action by a small distributor against a large distributor based upon the latter's sale of milk in Cape Girardeau for less than cost. In our judgment, the proven facts in the Dean case involve a cutthroat type of situation which the statute was clearly intended to cover. In Dean, a third distributor, Sunny Hill, had entered the Memphis, Tennessee market which Dean served in part, at a price much lower than the prevailing price in that city. By way of retaliation and essentially as a punitive measure directed against Sunny Hill, which had a high percentage of its total sales in Cape Girardeau, Dean entered the Cape market with milk as its single product. From the very inception of its operations in Cape, Dean priced its milk at substantially less than cost and operated at a loss for the entire period of its venture extending over a year. Other dairies serving Cape, including Albrecht, were compelled to reduce their price to approximately the level of Dean's price. The evidence disclosed that both Albrecht and Sunny Hill were essentially local dairies, while Dean's operations were conducted in eleven states and its volume of business was such as to enable it to sell at a loss for an extended period of time, with little, if any, detrimental effect on its overall profits. The opinion of the court noted many other significant facts and circumstances which impelled the conclusion that Dean's deliberate and continued sales of milk at a loss for well over a year and up to the very time of trial, were accompanied with the intent or effect of unfairly diverting trade from or otherwise injuring a competitor.

By way of contrast to Dean, respondent, a relatively small retail grocer, activated by the legitimate purpose of attracting patronage for its newly expanded, but still small scale operations, did no more than advertise and sell a private brand of milk at less than "cost to the retailer" (although at more than its invoice cost) for one brief four-day period. Other than the prima facie evidence of a statutory violation, if subsection 2 is valid, there is virtually no evidence demonstrating either a predatory intent or effect.

It was the view of the Trial Court that respondent's one time use of a private label brand of fresh milk as a "leader", under the circumstances shown by the evidence served a legitimate business purpose. Upon our independent review of the record, we reach the same conclusion as did the Trial Court and hold that injunctive relief is not here warranted. See Mott's Super Markets, Inc. v. Frassinelli, 148 Conn. 481, 172 A.2d 381, and Wiley v. Sampson-Ripley Co., 151 Me. 400, 120 A.2d 289, cited with approval in Adams Dairy, supra. It follows that the judgment should be affirmed.

Our determination of this case is necessarily limited to the facts and circumstances of record. Each case must be determined on its own peculiar facts and circumstances.

In view of the result reached herein, it is unnecessary for us to reach or decide constitutional questions asserted on the basis that the Act is a special law in violation of Article III, Section 40(30) of the Constitution of Missouri, 1945.

Judgment affirmed.

FINCH, P. J., and EAGER, J., concur.

DONNELLY, J., not sitting.