Wayne & Betty GOTT, et al.,
Respondents/Cross–
Appellants,

v.

DIRECTOR OF REVENUE,
Appellant/Cross–
Respondent.

No. SC 81336.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1999.

Juan D. Keller, John P. Barrie, B. Derek Rose, St. Louis, for Respondents/Cross-Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant/Cross-Respondent.

RONNIE L. WHITE, Judge.

Taxpayers seek review of a determination of the administrative hearing commission (AHC) regarding the Missouri income tax liability of Wayne and Betty Gott for tax years 1991 and 1992; Max and Carolyn Penner for 1991 and 1993; and Bobbie J. and Marsha Hufford for 1991 and 1993. All are shareholders in Town and Country Grocers of Fredericktown, Inc. In addition to their shares in the Fredericktown market, the Gotts are also the sole shareholders of Town and Country Supermarkets, Inc., located in Salem, Missouri. Both the Fredericktown and Salem markets are Missouri S-corporations as defined in section 143.471, RSMo 1994. All issues underlying this matter involve the calculation of Taxpayers' enterprise zone income modifications (EZM) and enterprise zone tax credits (EZC) for tax years 1991 through 1993.

In their returns, Taxpayers claimed various EZM, EZC, and resident tax credits, but failed to apportion the corporations' income when calculating their respective EZM and EZC. The EZM calculated by Taxpayers were based upon a certification of payroll fractions by the department of economic development (DED) for tax years 1990 through 1993.

During the course of an audit, the director of revenue (director) made several changes to Taxpayers' calculation of their EZM and EZC. The director primarily found the failure to apportion the corporations' income was improper. The director also requested the DED to recertify the EZM payroll fraction percentages that the DED had previously calculated. The director then recomputed the Taxpayers' EZM accordingly. These recertifications occurred several years after the previous certification filed by the DED.

Upon receipt of notices of adjustment (and in one case notice of deficiency), Taxpayers appealed the director's ruling to the AHC. In a memorandum dated August 18, 1997, the AHC denied motions for summary determination from both parties and made several holdings. First, the AHC held that Taxpayers were required to apportion the Fredericktown market's income for purposes of calculating their respective EZM and EZC. Second, noting its previous decision in *Vangilder v. Director of Revenue*,[1] the AHC held that the director could properly require the DED to recertify Taxpayers' payroll fractions for purposes of EZM calculation despite the fact that the original certification of the DED was never appealed and, therefore, was final.

After the hearing, the AHC issued a memorandum and order dated July 18, 1998. This memorandum and accompanying order decided the remaining legal issues and directed the parties to stipulate Taxpayers' tax liabilities based on the decision. The AHC then issued its final memorandum and order on December 8, 1998, which summarized the legal issues decided previously and announced the recalculated tax liability of Taxpayers.

This Court has exclusive jurisdiction over the construction of the revenue laws pursuant to article V, section 3 of the Missouri Constitution. Taxpayers assert that the AHC erred in ruling that: (1) the director may require the DED to revisit its final decision regarding certification of payroll fractions pursuant to § 135.250.1; and (2) the income of an S-corporation must be apportioned prior to the calculation of Taxpayers' EZM and EZC pursuant to §§ 135.220, RSMo Supp.1991 and Supp.1992. The director claims that the AHC erred by: (1) allowing Taxpayers to include part of their interest and rental income in their enterprise zone benefits; and (2) not requiring Taxpayers to claim a percentage of their deductions proportion-

1. No. 94–000072 RI (Mo. Admin. Hearing      Comm'n June 1, 1995).

ate to the amount of income they earned within the enterprise zone when calculating their enterprise zone benefits.

## LEGAL ANALYSIS

■ The AHC's decision must be upheld when authorized by law, when supported by competent and substantial evidence upon the record as a whole, and when the decision is not clearly contrary to the reasonable expectations of the General Assembly.[2] The AHC's factual determinations are to be upheld if supported by competent and substantial evidence upon the record as a whole. However, this Court owes no deference to the AHC's decisions on questions of law, which are matters for this Court's independent judgment.[3]

## I. RECOMPUTATION OF PAYROLL FRACTIONS

■ In their first point, Taxpayers argue that the payroll fractions they submitted to the DED for tax years 1991–1993 were approved by the DED, were not appealed, and, therefore, became "final" in accordance with section 135.250.6, RSMo Supp.1992. The director does not contest that the DED decision is final pursuant to that section. Instead, the director argues because he has the authority to properly determine the amount of tax benefits available to Taxpayers under section 135.250.2, such authority necessitates that he be able to require the DED to recompute a certification when audits reveal that the original certification was flawed. Furthermore, the director argues that Taxpayers had the opportunity to file a protest from the DED's recertification and even to appeal

the recertification to the AHC, but they chose not to do so. Finally, the director asserts that the director has the authority to correct the error overlooked by the DED since Taxpayers gave an ultimately erroneous compensation factor in their EZM calculations.

■ The director's arguments on this point are unpersuasive. Once Taxpayers failed to appeal the certification of the DED in accordance with section 135.250, RSMo Supp.1992, that certification became final. The word "final" must be given its ordinary meaning, as every word of a statute is presumed meaningful.[4] Furthermore, contrary to his suggestion, the director has no implied right to review the final decision of the DED. Section 135.250.1 provides that the DED shall prescribe the method for submitting applications for enterprise zone tax credits, shall determine the exemption allowed, and shall certify to the director that the taxpayer has satisfied all requirements and is eligible to claim the credits and exemption. The director's contention that he has implied authority to review the final decision of the DED goes too far.

■ When construing statutes, it is this Court's primary aim to ascertain the intent of the legislature from the language used and to give effect to that intent.[5] Administrative agencies have only those powers expressly conferred or reasonably implied by statute.[6] Section 135.250.2 states the following:

The director of revenue shall determine the amount of the taxpayer's refund, as allowed in section 135.245, if any, and shall notify the taxpayer in writing of any amount to be refunded. The di-

2. *See Becker Elec. Co. v. Director of Revenue,* 749 S.W.2d 403, 405 (Mo. banc 1988) and section 621.193.

3. *La–Z–Boy Chair Co. v. Director of Economic Development,* 983 S.W.2d 523, 524–25 (Mo. banc 1999); *Hewitt Well Drilling & Pump Service, Inc. v. Director of Revenue,* 847 S.W.2d 797, 797 (Mo. banc 1993).

4. *Hyde Park Housing Partnership v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993).

5. *Brown Group, Inc. v. Administrative Hearing Commission,* 649 S.W.2d 874 (Mo. banc 1983).

6. *Bodenhausen v. Missouri Board of Registration for the Healing Arts,* 900 S.W.2d 621, 622 (Mo. banc 1995).

rector of revenue may, subject to the requirements of section 536.021, RSMo, prescribe rules and regulations necessary to process the credits allowed in sections 135.225 and 135.235 and the exemption allowed in section 135.220 and the refund allowed following certification of eligibility by the director (of economic development).

Given the language of the statute, it is not proper to infer broad power by the director to require amended certifications from the DED. Section 135.250.1 clearly provides that the DED shall certify the eligibility for exemptions and credits and establishes that the DED must certify eligibility before the director may make any refund. Section 135.250 does not expressly confer power to the director sufficient to require the DED to reconsider its decision consistent with the director's findings. Nor can one reasonably infer such power from the statute. Had the legislature intended to grant the director power to appeal a final determination, it would have done so explicitly or with such language that reasonably infers such a legislative grant. Instead, the language used in section 135.250 establishes and clearly divides those powers granted to the director and those assigned to the DED.

■ The director's assertion that he must have the power to correct erroneous interpretations of the DED also lacks merit. The finality of a decision by an administrative body, like that of a judicial body, does not depend on the correctness of that decision.[7] Finally, the failure to seek review of the DED's recertification from either DED or the AHC is inconsequential. Because the DED's first determination be-

came final with the expiration of the appeals period under section 135.250, RSMo, the DED's recertification was a nullity. Moreover, because the recertification was void, the AHC would only have jurisdiction as necessary to determine the recertification's invalidity and to dismiss this point of the appeal.[8] To the extent the AHC's decision grants the director power to seek recertification from the DED, its decision is reversed.

## II. INCOME APPLICABLE FOR EZM & EZC DETERMINATION

■ In their second assertion of error, Taxpayers argue that section 135.220, RSMo Supp.1992, requires their EZM and EZC to be calculated from the entire Missouri taxable income of their S-corporation, not just from income by sources within Missouri. In support of this assertion, Taxpayers compare the language of section 135.220 before and after its amendment in 1992. Taxpayers argue that because post-amendment section 135.220 (which refers to section 135.100 as to what constitutes new business facility income) does not include the "from sources in Missouri" language contained in the previous version, the EZM must be computed from the corporation's entire Missouri taxable income.

■ The principal rule of statutory construction is to ascertain the intent of the legislature.[9] When construing a statute, this Court must consider the object the legislature seeks to accomplish with an eye towards finding resolution to the problems addressed therein.[10] The provisions of a legislative act are not to be read in

---

**7.** *See Buckley v. Buckley,* 889 S.W.2d 175, 179 (Mo.App.1994) (noting that for purposes of preventing multiple litigation, conservation of judicial resources, and avoidance of inconsistent judicial decisions, res judicata and collateral estoppel apply equally to all final decisions whether correct or incorrect).

**8.** *Settles v. Settles,* 913 S.W.2d 101, 103–04 (Mo.App.1995).

**9.** *Sheldon v. Board of Trustees of the Police Retirement System,* 779 S.W.2d 553, 554 (Mo. banc 1989).

**10.** *State ex rel. Kemp v. Hodge,* 629 S.W.2d 353, 358 (Mo. banc 1982).

isolation, but are to be construed together and read in harmony with the entire act.[11]

Taxpayers argue that they should not be required to apportion income from Missouri sources when calculating their EZM and EZC because S-corporations are not permitted to apportion income. They rely on *Wolff v. Director of Revenue*[12] and *Lloyd v. Director of Revenue*[13] for this proposition. These cases held that S-corporations are not subject to apportionment under section 143.431.[14] However, these cases do not address calculation of enterprise zone benefits for S-corporations. Because the corporations involved in this matter are S-corporations, they are governed by section 135.220.2, which refers back to subsection 1 for further guidance.[15] Section 135.220.1, RSMo Supp.1991, pro-

vided that the Missouri taxable income earned by the business located in the enterprise zone shall be determined by multiplying the business' Missouri taxable income from sources within Missouri by a fraction designed to apportion the income for purposes of calculating EZM and EZC.[16]

Section 135.220.1 RSMo Supp.1992, differs from its predecessor in two important ways.[17] First, the 1992 version limits its application to that income earned from establishing a *new business facility* in the enterprise zone. Section 135.220.1, RSMo Supp.1992, defines that portion of income attributed to the new business facility as that determined according to paragraph (b) of subdivision (6) of section 135.100.[18]

11. *McCormack v. Stewart Enterprises, Inc.*, 916 S.W.2d 219, 225 (Mo.App.1995).

12. 791 S.W.2d 390 (Mo. banc 1990).

13. 851 S.W.2d 519 (Mo. banc 1993).

14. Section 143.431 defines Missouri taxable income for C-corporations.

15. Section 135.220.2 provides:
In the case of a small corporation described in section 143.471, RSMo., or a partnership, in computing the Missouri taxable income of the taxpayers described in subdivisions (1) and (2) of this subsection, a deduction apportioned in proportion to their share of ownership of the business on the last day of the taxpayer's tax period for which such tax credits are being claimed, shall be allowed from their Missouri adjusted gross income in the amount of *one-half of the Missouri taxable income earned by the business located in the enterprise zone*, as defined in this section, to the following:
(1) The shareholders of a small corporation described in section 143.471, RSMo;
(2) The partners in a partnership.
[This section was unchanged by the 1992 amendment. All emphasis in footnotes is added unless otherwise noted.]

16. Section 135.220.1 RSMo Supp.1991, provided:
The provisions of chapter 143, RSMo, notwithstanding, one-half of the Missouri taxable income attributed to a business in an enterprise zone which is earned by a taxpayer having established a new business facility located within an enterprise zone shall be ex-

empt from taxation under chapter 143, RSMo. If the business also earns income outside the enterprise zone, then the Missouri taxable income derived by the business inside the zone shall be determined by multiplying the business' Missouri taxable income *from sources in Missouri*, computed in accordance with chapter 143, RSMo, by a fraction...

17. After the 1992 amendment, section 135.220.1 provided:
The provisions of chapter 143, RSMo, notwithstanding, one half of the Missouri taxable income attributed to a new business facility in an enterprise zone *which is earned by a taxpayer establishing and operating a new business facility located within an enterprise zone* shall be exempt from taxation under chapter 143, RSMo. *That portion of income attributed to the new business facility shall be determined in a manner prescribed in paragraph (b) of subdivision (6) of section 135.100* ...

18. Section 135.100(6)(b), RSMo Supp.1992, defines the payroll factor as:
[a] fraction, the numerator of which is the total amount paid during the tax period by the taxpayer for compensation to persons qualifying as new business facility employees, as determined by subsection 4 of section 135.110, at the new business facility, and the denominator of which is the total amount paid in this state during the tax period by the taxpayer for compensation. The compensation paid in this state shall be determined as provided in chapter 32, RSMo ...

That paragraph provides the payroll factor, which is a fraction with total dollars paid to *new business facility employees* in the numerator and the *total amount paid in the state for compensation* in the denominator. Income eligible for EZM and EZC treatment is properly apportioned when this fraction is multiplied by the Missouri taxable income.

The second difference is that the 1992 version does not include the "from sources in Missouri" language. By eliminating the "from sources in Missouri" language in the 1992 version, the legislature intends that the payroll factor be the method to apportion this income, without use of section 143.451 apportionment methods. To apply both section 135.220 and section 143.451 would double-apportion taxpayers' income.

This plain reading of the statute is consistent with the purpose it seeks to accomplish. When enacting these enterprise zone benefits, the legislature's sought to redevelop areas with pervasive poverty, unemployment, and general distress.[19] By multiplying the Missouri taxable income by the payroll factor, the income is fairly apportioned and the tax benefits are applied only to the extent of the investment in the enterprise zone. Accordingly, the AHC's determination is reversed to the extent it requires Missouri taxable income to be apportioned prior to multiplication by the payroll factor.

### III. INCLUSION OF RENTAL AND INTEREST INCOME

■ In its first assertion of error, the director argues the AHC erred by allowing Taxpayers to include income from rentals and interest earned by the Fredericktown market in calculating enterprise zone benefits. The AHC determined that since the Fredericktown market used the single-factor method of apportionment via section 143.451, RSMo 1994, no distinction can be made between business and non-business income of the corporation.

The method of apportionment used by the corporation is irrelevant to the calculation of EZM and EZC in section 135.220 discussed in Part II above. It is not the business or non-business nature of the income that determines whether the income may be included for purposes of calculating EZM and EZC. In accordance with section 135.220, RSMo Supp.1992, one must compute the amount of income that originates from the new business facility in the enterprise zone by a statutory method. To the extent the S-corporation properly includes rental and interest income in its Missouri taxable income, it is included in calculating EZM and EZC.

### IV. NECESSITY TO CLAIM PERCENTAGE OF DEDUCTIONS

■ In its second assertion of error, the director contends the AHC committed error by failing to subtract a proportionate amount of the Taxpayers' personal deductions and exemptions from the S-corporation's income when determining Missouri taxable income. The director specifically disputes the AHC's reliance upon Taxpayers' form K–1 to determine their distributive share of deductions attributable to the S-corporation, as the deductions on the K–1 do not fully reflect the gain that Taxpayers may have received by virtue of their holdings in the corporation. For example, the director contends Taxpayers claimed sizable federal income tax deductions during the years in question, but that income does not appear on the K–1 since the S-corporation does not have taxable income. Thus, because some portion of Taxpayers' deductions on their personal income is derived from their investment in the S-corporation located in the enterprise zone, the tax benefits they derive from operating in the zone should be proportionally reduced by their deductions.

This argument is without merit. The AHC determined the S-corporation is the

"taxpayer" for purposes of determining EZM and EZC.[20] The legislature has provided only that such exemptions are determined by multiplying Missouri taxable income by the appropriate fraction. It made no mention of deductions, exemptions, or other income derived by its shareholders. To unnecessarily complicate the calculation of these benefits would be improper. Accordingly, the decision of the AHC on this point is affirmed.

For the foregoing reasons, the decision of the AHC is reversed in part and affirmed in part. The case is remanded to the AHC for proceedings consistent with this opinion.

All concur.

---

**20.** *See* Section 135.100(13), RSMo Supp. 1992.