STATE ex rel. Jeremiah W. (Jay) NIXON, Attorney General, Respondent,

v.

QUIKTRIP CORPORATION, Appellant.

No. SC 85399.

Supreme Court of Missouri, En Banc.

March 30, 2004.

Mark G. Arnold, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Schneider, Asst. Atty. Gen., James R. Layton, State Solicitor, Jefferson City, for Respondent.

James D. Deutsch, Thomas W. Rynard, Jefferson City, for amicus curiae.

MICHAEL A. WOLFF, Judge.

### Introduction

Does Missouri's Motor Fuel Marketing Act protect gas stations from competition, which may raise prices to consumers, or does the act only protect these businesses from injurious competition?

The state brought an action against QuikTrip for pricing its retail gasoline sales below its wholesale cost at its Herculaneum store on 23 days, alleging that QuikTrip violated the act. On stipulated facts, the circuit court granted summary judgment in favor of the state and assessed penalties of $3,000 per day.

On appeal, QuikTrip challenges the constitutionality of the statute and, alternatively, argues that the circuit court has misconstrued the statute by holding QuikTrip liable for selling gas to the public at less than its wholesale cost. Because of the challenge to the validity of the statute, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3.

■ The Motor Fuel Marketing Act,[1] in section 416.615, makes it unlawful for QuikTrip to sell gas below its cost if the intent or effect of the sale or offer is (1) "to injure competition;" or (2) "to induce the purchase of other merchandise, to unfairly divert trade from a competitor, or otherwise to injure a competitor." The state's case rests on the theory that QuikTrip's gas pricing unfairly diverted trade from a competitor or otherwise "injured" a competitor. The state does not contend that there was an injury to competition.

What does it mean to "unfairly divert trade from a competitor, or otherwise to injure a competitor?" The circuit court's decision seems to be premised on the theory that a competitor suffers "injury" from QuikTrip's below-cost fuel pricing when the competitor lowers its prices and makes a smaller profit on its fuel sales. The statute, however, speaks simply of "a competitor," and these gas stations compete not just in fuel sales but in sales of many other items, the customer traffic for which may be generated by fuel sales. The statute, moreover, does not define "injure."

When QuikTrip prices its fuels below cost, and if a competitor must price its fuels below cost to meet this competition, the competitor has two choices: (1) the competitor can resist lowering its prices below its costs, in which case a court could find that the intent or effect of QuikTrip's below-cost pricing unfairly diverts trade from the competitor; or (2) the competitor can lower its prices below its costs and thus be "injured" by having to sell its fuels below cost, which may threaten its survival in the marketplace unless sales of other items keep the business profitable.

The circuit court's decision is premised on the theory that QuikTrip's sales of motor fuels below cost apparently diminished the competitor's profits. This is not sufficient to make a viable claim for unfairly diverting trade or causing "injury" to a competitor. The state's claim is, thus, unsupported by evidence of unfair diversion of trade or of injury to a competitor. The circuit court's judgment is reversed, and the case is remanded.

## Facts and Decision of the Circuit Court

The Attorney General brought an enforcement action against QuikTrip in 1999 alleging that QuikTrip had violated the act when it sold motor fuel below cost where the effect of that sale was to unfairly di-

1. Sections 416.600 to 416.640. All statutory citations are to RSMo 2000 unless otherwise indicated.

The correct text of section 416.615 provides:

1. It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel below cost as defined in subdivision (2) of section 416.605, if:

(1) The intent or effect of the sale or offer is to injure competition; or

(2) The intent or effect of the sale or offer is to induce the purchase of other merchandise, to unfairly divert trade from a competitor, or otherwise to injure a competitor.

2. It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel at a price lower than the seller charges other persons at the same time and on the same level of distribution, if the intent

or effect of the sale or offer is to injure competition.

3. It is unlawful for a person engaged in commerce in this state to sell or transfer motor fuel to itself or an affiliate for resale in this state on a different marketing level of distribution at a transfer price lower than the price it charges a person who purchases for resale at the same time and on the same level of distribution, if the intent or effect of the sale or transfer is to injure competition.

The statute was amended in 1995 to remove the words "or effect." That amendment was invalid under *Hammerschmidt v. Boone County*, 877 S.W.2d 98 (Mo. banc 1994). The same conclusion was reached by the trial court in this case and by the Circuit Court of Cole County in *Missouri Petroleum Marketers Assoc. v. State of Missouri*, No. CV 195–989 CC, which was not appealed.

vert trade from a competitor or otherwise to injure a competitor. The state claimed that QuikTrip's below-cost sales at its Herculaneum, Missouri, store required its competitors either to lower their own prices or lose customers; thus, such sales unfairly diverted trade from competitors or otherwise injured them. The Attorney General sought injunctive relief and the imposition of a civil penalty.

QuikTrip argued that the use of the term "unfair" in the act means that there must be predation; therefore, the state must show predatory effect by either demonstrating the intent to destroy competition or actual destruction of competition. QuikTrip also claimed that the act violates the due process guaranty of the constitution because (1) the act is not reasonably related to the problems it seeks to address, and (2) it is impossible for QuikTrip to comply with the act's terms.

Both parties filed motions for summary judgment. The state initially alleged sales of motor fuel below cost on 76 days. At trial, the parties limited the motion for partial summary judgment to address only 23 days from March 16, 1997, to July 19, 1999, during which QuikTrip store number 611 in Herculaneum, Missouri, sold motor fuel below its costs and below the prices of its competitors.[2] QuikTrip concedes that on 22 days over the 33 months in question, it sold diesel fuel below cost and was not then matching a competitor's price. On one day, it sold unleaded gasoline below cost.

The circuit court granted partial summary judgment in favor of the state. The court ruled that the act satisfied substantive due process and that the state had made its *prima facie* showing that QuikTrip had made below-cost sales with the effect of either injuring a competitor or of unfairly diverting trade from a competitor.[3] Following QuikTrip's motion for rehearing and the state's dismissal of its other allegations based on other dates of selling below cost, the circuit court entered judgment in favor of the state, finding 23 violations of the act and assessing civil penalties against QuikTrip.

The circuit court found that there were no material facts in dispute regarding QuikTrip's liability for the 23 dates "considering that the statute is constitutional without a predation requirement." The court stated, "On every day where QuikTrip priced below cost without a valid statutory defense, there is no dispute that such pricing caused injury to competitors."

The state may recover civil penalties of $1,000 up to $5,000 per violation of section 416.615. The circuit court ordered QuikTrip to pay the state $75,000, claiming to assess a $3,000 penalty for each day of the 23 days QuikTrip violated the Act.[4] QuikTrip appeals.[5]

2. Section 416.620 excepts certain types of transactions from being found to violate 416.615. Section 416.620.3 provides for a "meeting competition" defense, which excepts below-cost sales when the seller is making a "good faith effort to meet an equally low price of a competitor." The "meeting competition" defense is not relevant to the 23 days at issue.

3. Section 416.640 shifts the evidentiary burden to the defendant when the state or the private plaintiff first makes a *prima facie* showing of a violation under 416.615.

4. Penalties of $3,000 per day for 23 days would amount to $69,000, not $75,000. There is no explanation for the discrepancy.

5. This Court's review of a grant of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is an issue of law and the criteria for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* When

## "To Unfairly Divert Trade" or "Otherwise to Injure a Competitor"

■ Section 416.615 makes it unlawful for QuikTrip to sell motor fuel below cost if, as the state contends in this case, "the intent or effect of the sale is ... to unfairly divert trade from a competitor, or otherwise to injure a competitor."

The question is whether the statute protects the QuikTrip competitor from the effects of competition or, more narrowly, protects only against competition that injures a competitor or that unfairly diverts trade from its business.

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). When construing a statute, the Court considers the object the legislature seeks to accomplish and aims to resolve the problems addressed therein. *Gott v. Director of Revenue*, 5 S.W.3d 155, 159 (Mo. banc 1999).

■ The statute does not define "competitor." Is a "competitor" of QuikTrip simply another business that sells motor fuel, or is a "competitor" one who sells motor fuel and the other things that are sold in gas stations or truck stops, including soda, snacks, and other merchandise commonly purchased by travelers? "The plain and ordinary meaning of a word is derived from the dictionary." *Hemeyer v. KRCG–TV*, 6 S.W.3d 880, 881 (Mo. banc 1999). The dictionary definition of "competitor" is "one that is engaged in selling or buying goods or services in the same market as another." [6] Webster's Third New International Dictionary 464 (1993). If "competitors" are viewed as businesses that compete in fuel and the other items sold to travelers, then the record does not disclose the extent to which QuikTrip's below-cost pricing, on the days involved, may or may not have affected total sales at a business location on those days.

The argument before the circuit court solely concerned the sale of fuel. However, competition in the sale of motor fuel by the posting of fuel prices presumably is intended to generate customer traffic so that other items, such as snacks and travel supplies, can be sold from the location. The record in this case provides only scant information about the businesses' competition in the sale of items other than motor fuel. The record includes financial statements from a Mr. Fuel station in Herculaneum, which sells diesel and unleaded fuel, and from a Citgo station in Imperial, which does not sell diesel fuel. Financial statements from Arogas' Mr. Fuel indicate that the sale of merchandise during 1997 through 2000 accounted for approximately $90,000 of its gross profit each year. The sale of merchandise in each of these years was 13.4 percent to 19 percent of the total gross profits. In over-all volume it appears that the sales of items other than fuels is a fairly small part of these businesses' gross receipts, but the profit margins may be much higher than for the sale of fuels.

When QuikTrip posts lower fuel prices, the two choices faced by a QuikTrip com-

---

considering appeals from summary judgments, the Court reviews the record in the light most favorable to the party against whom judgment was entered and will accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

6. There is also nothing in the statute to determine what a relevant "market" is for the purpose of determining who the competitors are. The record shows that there are at least 11 gas stations within three miles of the Herculaneum QuikTrip.

petitor are, as stated, to (1) resist lowering its prices because to do so would threaten its financial viability; or (2) lower its fuel prices to a point that its over-all financial viability is threatened. The first option would lead to the conclusion that QuikTrip had lowered its prices below costs unfairly to divert trade from its competitor. The competitor's second option is to lower its prices below its costs and thereby suffer an injury.[7]

The record does not disclose whether QuikTrip's actions unfairly diverted trade from its competitors because the competitors were unable to lower prices to compete with QuikTrip's pricing. This is a question that can be explored on remand.

**Was There "Injury?"**

 The other theory, also to be explored on remand, is whether QuikTrip's competitors suffered "injury." The statute does not say what it means to act with the intent or effect "to injure a competitor." The concept of "injury" is not defined.

The statute's use of the common word "injury"[8] allows for two plausible interpretations:

(1) "To injure a competitor" could mean simply a diminution of motor fuel sales by the competitor because of a posted lower price at the QuikTrip store. Under this interpretation, any diminution of sales volume in dollars, even though the competitor is still earning a profit, would be an "injury" because the competitor was not making as much as it would have made in the absence of the lower price at QuikTrip.

(2) The competitor could be deemed to suffer an injury only if it is forced, by virtue of the lower QuikTrip prices, to price its fuel product below its cost. In this interpretation, an "injury" only occurs when the competitor is in effect forced to operate its over-all business at a loss.

If (1) constitutes an "injury to a competitor," the statute shields the competitor from the ordinary effects of competition. One would assume that in a competitive market, a lowering of price by a competitor is intended to divert business from the competitor to one's self. In this interpretation, competition itself is injurious.

To interpret the statute in this way would be to assume that the general assembly intended by the statute greatly to diminish or eliminate competition in the sales of motor fuel and, thus, to create a state-enforced cartel of motor fuel sellers. Such an interpretation of the statute's concept of injury would result in injury to the public's interest in competition, with consumers thereby having to pay higher fuel prices at retail.

In the absence of a statutory definition, the concept of injury should be confined to the action of lowering posted prices to injure a competitor by forcing the competitor to sell below its cost. That kind of injury, if sustained over a period of time, would drive the competitor out of business, thus eliminating competition, and resulting ultimately in higher prices to the consum-

---

**7.** There is a third possibility, but whether it existed cannot be discerned from this record: When QuikTrip's fuel prices are set at below its costs, a competitor with lower costs might lower its prices to QuikTrip's level or below without falling below profitability.

**8.** The dictionary definition of "injury" is "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm: wrong; a violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong." Webster's Third New International Dictionary 1164 (1993).

ing public. If the public interest is the interest to be protected by the statute, the interpretation in (2) is the correct one.

**Comparison to Missouri's Unfair Milk Sales Practices Act**

QuikTrip claims that the word "unfairly" in section 416.615.1(2) modifies both "divert trade" and "otherwise to injure a competitor," asserting that only those below-cost sales that unfairly divert trade or unfairly injure competitors are illegal. A reading of the statute demonstrates that the word "unfairly" only applies to "divert trade from a competitor."

QuikTrip relies on cases interpreting the Unfair Milk Sales Practices Act, sections 416.410 to 416.560, to argue that the state must show that QuikTrip unfairly injured a competitor. QuikTrip claims that *State ex rel. Davis v. Thrifty Foodliner, Inc.*, 432 S.W.2d 287 (Mo.1968), and *State ex rel. Thomason v. Adams Dairy Co.*, 379 S.W.2d 553 (Mo.1964), hold that "unfairly" modifies both "diverting trade" and "otherwise injuring a competitor." Instead, these cases address the prohibition against "unfairly diverting trade" and do not suggest that "unfairly" modifies the provision involving injury to a competitor. QuikTrip correctly asserts that cases interpreting the milk statute hold that a below-cost sale or free distribution of milk is not illegal unless the intent or effect is unfairly to divert such trade. *Davis*, 432 S.W.2d at 291; *Thomason*, 379 S.W.2d at 556.

While the act uses language similar to Missouri's Unfair Milk Sales Practices Act, passed in 1959,[9] these statutes differ in important ways. First, the milk statute does not prohibit the use of loss leaders— the pricing of one product in order to induce the customer to buy other products—while the use of motor fuel as a loss leader is expressly forbidden by section 416.615.1(2). Second, the milk statute specifically allows pricing below cost when sales are made in an isolated transaction and not in the usual course of business. Section 416.445(1).

**The State Must Show That QuikTrip's Posted Prices Unfairly Diverted Trade or Injured a Competitor's Over-all Operations**

The state argues that below-cost sales injure QuikTrip's competitors because competitors must either lower their prices or lose customers. While every below-cost sale produces this kind of "injury," not every below-cost sale is illegal. The parties agree that the act does not prohibit all below-cost sales of motor fuel. The legislature included subdivisions (1) and (2), which make it unlawful to sell or offer to sell motor fuel below cost with the intent or effect of injuring competition, inducing the purchase of other merchandise, unfairly diverting trade from a competitor, or otherwise injuring a competitor. The statute, therefore, allows below-cost sales that do not fit the criteria of subdivisions (1) and (2) that make such sales illegal.

Some of the sales of which the state complains are violations that are one-hundredth or one-thousandth of a cent per gallon below cost. For example, the state alleged that, on March 14 and 15, 1999, QuikTrip violated the act by charging one-thousandth of a cent per gallon below its costs. Because the only pricing information available to competitors is the price posted on the pump ·or advertised outside

---

9. Section 416.415.1 provides:

No processor or distributor shall, with the intent or with the effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, advertise, offer to sell or sell within the state of Missouri, at wholesale or retail, any milk product for less than cost to the processor or distributor.

of the gas station, competitors are only aware of the price QuikTrip charges to one-tenth of a cent per gallon. Violations below one-tenth of a cent, therefore, presumably would not affect competitors' pricing decisions.

QuikTrip claims that in almost every case, the cause of the below-cost sale was an increase in QuikTrip's costs, rather than a reduction in price that would cause competitors to lower their prices. According to QuikTrip, on only five of the 76 days on which the state alleged QuikTrip sold below cost did QuikTrip reduce the price it charged to consumers. On three of those days, QuikTrip sold above cost, and on a fourth it was matching the price a competitor, Mr. Fuel, charged.

The state has not demonstrated that QuikTrip's occasional below-cost sales had an adverse effect on QuikTrip's competitors. Between March 1997 and August 1999, there were at least 11 stores within three miles of Herculaneum that competed with QuikTrip's store number 611. According to the record, no competing gas station exited the market during that period and one new entrant joined it.

QuikTrip's nearest competitors are Midwest Petroleum, which operates a Citgo station in Imperial, but does not sell diesel fuel at this station, and Arogas, which operates a Mr. Fuel in Herculaneum. The Citgo station had a gross margin of 5.8 percent in 1998 and 6.4 percent in 1999 on its gasoline sales, earning a profit every year. The Mr. Fuel station earned gross margins of 5.3 percent in 1997, 7.6 percent in 1998, 6.6 percent in 1999, and 6.8 percent in 2000 on its motor fuel operations. No station appears to have been in danger of going out of business.

## Conclusion

This Court concludes that, under the act, the state must show that QuikTrip posted prices, when lower than its costs, caused an unfair diversion of trade or an injury to a competitor's over-all operations. Otherwise, the effect of the statute is to increase the profits of already healthy private businesses at the expense of consumers. There is no need, with this interpretation of the statute, to consider QuikTrip's due process arguments.

The circuit court's decision is not supported by evidence of unfair diversion of trade or of injury to a competitor as this Court interprets the act. The judgment is reversed, and the case is remanded.

WHITE, C.J., PRICE and TEITELMAN, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

BENTON and STITH, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

Section 416.615.2 states that it is illegal to sell motor fuel below cost if "... 2) the intent or effect of the sale or offer is to induce the purchase of other merchandise, to unfairly divert trade from a competitor, or otherwise to injure a competitor." Although the General Assembly did not define the phrase "or otherwise to injure a competitor," it is clearly a catchall provision. Thus, any sale of motor fuel below costs that injures a competitor in any way other than by "induc[ing] the purchase of other merchandise" or by "unfairly divert[ing] trade from a competitor" is also unlawful under the act.

What, then, is an injury to a competitor? This is the focus of the majority opinion, which correctly begins its analysis by noting that a competitor of QuikTrip has two choices when QuikTrip posts lower fuel

prices: 1) to resist lowering its prices; or 2) to lower its prices. In my view, both choices injure the competitor. If a competitor resists lowering its prices, it will be injured by losing business to QuikTrip, which is a claim that falls under the clause "to unfairly divert trade." On the other hand, if a competitor lowers its prices in response to QuikTrip, the competitor will lose profits and in that way is otherwise injured. In this case, it is undisputed that QuikTrip's competitors have routinely and immediately reduced their own fuel prices to correspond to QuikTrip's below cost pricing, and I would hold that each corresponding reduction is sufficient proof of injury.

As I understand the majority opinion, the clause "or otherwise injure a competitor" can only be invoked where a competitor is forced to lower its fuel price below its own costs so that "the competitor is in effect forced to operate its over-all business at a loss." This interpretation is based not on the plain meaning of the word "injure," but the majority's own policy determination that if "injure" were broadly interpreted, the statute could "greatly diminish or eliminate the competition in the sale of motor fuel and, thus, create a state-enforced cartel of motor fuel sellers." If we are to consider policy, however, the real policy behind the Act, as this Court noted in *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 241 (Mo. banc 2001), is to prevent predatory pricing, which otherwise would drive competitors from the market and allow the formation of monopolies, which results in higher prices in the long run. Conversely, the majority policy analysis would encourage price wars among competitors, which only result in lower prices in the short run.

In any event, I would base the opinion on the fact that the clause "or otherwise injure a competitor" is all-inclusive and necessarily addresses all injuries suffered, to whatever extent. As such, the clause covers not only those instances where a competitor is forced to lower its fuel prices below its own costs, but also those instances where a competitor is forced to lower its fuel prices to any degree. Even where a competitor lowers its prices to a level that does not fall below its own costs, there still is an injury due to a reduction in profits.

That said, I agree that not every below cost sale violates the Act. For example, if, as the majority asserts, prices were publicly posted only to the nearest one-tenth of a cent per gallon, then price reductions below one-tenth of a cent per gallon do not injure a competitor because there is no need for the competitor to make a corresponding reduction in price. In this case, however, the record does not clearly indicate which of the 23 below cost prices in question were posted to one-tenth of a cent per gallon or more. For that reason, I, too, would reverse the judgment, but only to remand for further fact-findings.