**STATE BOARD OF ACCOUNTANCY,**
Appellant,

v.

**INTEGRATED FINANCIAL SOLUTIONS, L.L.C.,**
Respondent.

No. SC 89037.

Supreme Court of Missouri,
En Banc.

June 24, 2008.

Samantha Anne Harris, Hearne & Greene, Jefferson City, Stanley D. Davis, Shook, Hardy & Bacon, L.L.P., Kansas City, for Appellee.

Dennis K. Hoffert, Stefan J. Glynias, Lashly & Bauer, P.C., St. Louis, for Respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

The issue presented in this appeal is whether the Missouri State Board of Accountancy may exercise its discretion to deny a permit to a public accounting firm based on the criminal conduct of a 49% shareholder that occurred before the formation of the firm. After the Administrative Hearing Commission (AHC), the Circuit Court of Cole County, and the Court of Appeals answered that question in the

negative, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is reversed.

## I. Facts and Procedural History

In 1999, Carl Kossmeyer pled guilty to wire fraud in federal court, admitting as part of the plea that he "knowingly participated in a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises." The facts, as stipulated by Kossmeyer, involved a marketing scheme through which Kossmeyer and his partner marketed an instruction course that promised to teach buyers how to acquire businesses using none of their own money. Clients had the option of taking a training course by home study for $495 or in person for as much as $7500. Kossmeyer also authored and marketed a book titled "How to Buy or Start Any Kind of Business Without Any of Your Own Cash." The cover of the book displayed a photo of Kossmeyer and his CPA title. Further, Kossmeyer and his partner prepared a promotional video and distributed it to potential buyers. All of these materials contained false statements of "success stories" from former "clients" who attributed their business accomplishments to Kossmeyer's instruction.

In 2001, the Board of Accountancy revoked Kossmeyer's license to practice as a CPA in the state of Missouri, finding that Kossmeyer's CPA license was subject to discipline under section 326.130.2(2), RSMo 2000 (repealed 2001), because his guilty plea to fraud demonstrated a lack of moral character. Pursuant to section 536.120, RSMo 2000, the revocation was stayed during the ensuing administrative and judicial appeals. However, the revocation of Kossmeyer's license became final on September 26, 2006.

In February 2005, before the revocation became final, Kossmeyer and two other CPAs formed Integrated Financial Solutions, LLC (IFS), and applied for a certified public accountant firm permit under section 326.289, RSMo Supp.2005. The permit application listed three licensed shareholders: Steven Strauss, Judy Elias, and Carl Kossmeyer. With a 49% interest, Kossmeyer was the largest shareholder, while Strauss and Elias owned 40% and 11%, respectively. All three owners would provide professional services to their clients in Missouri. Strauss and Elias were both CPAs, licensed and in good standing, and prior to the formation of IFS, they operated their own CPA firm, Straus & Elias, P.C.

The Board denied IFS's application by a letter dated March 4, 2005, citing Kossmeyer's association with the firm, his conviction for fraud, and the stayed revocation of his license as the basis therefor. Further, the Board found that because Kossmeyer's scheme involved his status and expertise as a licensed CPA, the admitted fraud, misrepresentation, and dishonesty bore directly on his "performance of the functions or duties of a CPA." The Board then concluded that "Mr. Kossmeyer's criminal conviction and the underlying conduct related to his criminal offense reflect adversely on the firm as a whole and demonstrates the firm's lack of fitness to engage in the practice of accounting." The Board also noted that "revocation [of Kossmeyer's license], once imposed, would be an additional basis for the denial of this application pursuant to sections 326.310.3 and 326.289.4(1)."

The AHC reversed, ordering the Board to issue the permit to IFS. The AHC reasoned that while conviction of a felony is certainly grounds for denial of a permit under section 326.310.2(2), Kossmeyer's conduct occurred prior to the formation of

IFS and, therefore, could not be considered in determining whether the firm met licensing standards. Furthermore, the AHC found that the pending revocation of Kossmeyer's license was not ground for denial because section 326.289.4 only requires that licensed CPAs make up "a simple majority of the ownership of the firm, in terms of financial interests and voting rights." The Board then brought this appeal.

## II. Standard of Review

On appeal, this Court reviews the decision of the agency, not the circuit court. *Tendai v. State Bd. of Reg. for Healing Arts*, 161 S.W.3d 358, 365 (Mo. banc 2005). The standard of review is *de novo. Id.* "To the extent that [the] conclusions of law contain statements of fact or ultimate fact, the Court defers to the commission as fact finder if the conclusions are supported by competent and substantial evidence when considering the record as a whole." *Id.; see* section 536.140.2, RSMo 2000. However, no deference is given the AHC's decisions on questions of law, "which are matters for this Court's independent judgment." *Gott v. Dir. of Revenue*, 5 S.W.3d 155, 157 (Mo. banc 1999).

## III. Analysis

Chapter 326, the Missouri Accountancy Act, regulates CPAs and the accounting profession and establishes the Board of Accountancy. A statement of policy set out in section 326.253, RSMo Supp.2007, makes clear the Board's purpose: to protect the public by ensuring the integrity of the CPA profession. This necessarily requires the Board to examine the fitness of those who would offer professional advice as CPAs, whether individually or as members of an accounting firm. The applicant for professional licensure bears the burden of proving that it meets the statutory requirements for a firm permit. *Francois v. State Bd. of Reg. for Healing Arts*, 880 S.W.2d 601, 603 (Mo. App.1994) (holding that reinstatement of revoked license was not proper where licensee failed to demonstrate rehabilitation of his moral character after conviction of a felony).

### A.

In denying IFS's application for a firm "permit," which is defined in section 326.256.1(15), RSMo Supp.2007, as "a permit to practice as a certified public accountant firm pursuant to section 326.289," the Board invoked sections 326.310 and 326.280, RSMo Supp.2007. Section 326.310 states:

1. The board may refuse to issue any license or permit required pursuant to this chapter for one or any combination of causes stated in subsection 2 of this section....

2. The board may file a complaint with the administrative hearing commission as provided by chapter 621, RSMo, or may initiate settlement procedures as provided by 621.045, RSMo, against any certified public accountant or permit holder required by this chapter or any person who fails to renew or surrenders the person's certificate, license or permit for any one or any combination of the following causes:

....

(2) The person has been finally adjudicated and found guilty, or entered a plea of guilty or nolo contendere, in a criminal prosecution under the laws of any state or of the United States, for any offense reasonably related to the qualifications, functions or duties of any profession licensed or regulated pursuant to this chapter, for any offense an essential element of which is fraud, dishonesty or an act of violence, or for any offense

involving moral turpitude, whether or not sentence is imposed;

. . . .

(5) Incompentency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by this chapter;

(6) Violation of, or assisting or enabling any person to violate, any provision of this chapter or any lawful rule or regulation adopted pursuant to this chapter;

. . . .

(13) Violation of any professional trust or confidence[.]

Section 326.280, which informs section 326.310, states:

1. A license shall be granted by the board to any person who meets the requirements of this chapter and who:

. . . .

(3) Is of good moral character[.]

IFS contends, however, that sections 326.310 and 326.280 are inapplicable to its application for an initial permit as a CPA firm under section 326.289. That section states:

1. The board may grant or renew permits to practice as a certified public accounting firm to entities that make application and demonstrate their qualifications in accordance with this section or to certified public accounting firms originally licensed in another state that establish an office in this state. A firm should hold a permit issued pursuant to this section to provide attest, review or compilation services or to use the title certified public accountant or certified public accounting firm.

. . . .

4. An applicant for initial issuance or renewal of a permit to practice pursuant to this section shall be required to show that:

(1) Notwithstanding any other provision of law to the contrary, a simple majority of the ownership of the firm, in terms of financial interests and voting rights of all partners, officers, principals, shareholders, members or managers, belongs to licensees who are licensed in some state, and the partners, officers, principals, shareholders, members or managers, whose principal place of business is in this state and who perform professional services in this state are licensees pursuant to section 326.280 or the corresponding provision of prior law. Although firms may include nonlicensee owners, the firm and its ownership shall comply with rules promulgated by the board[.]

IFS maintains that the failure to meet the requirements set forth in section 326.289 is the only reason the Board may properly deny a permit to an applicant firm and that having complied with this section, IFS is entitled to a permit.

■■■ This Court disagrees. The objective of statutory construction, of course, is "to ascertain the intent of the legislature from the language used and to give effect to that intent." *Gott*, 5 S.W.3d at 158. Under the statute's plain language, the Board *may* issue the permit if the minimum threshold is met, but is not *required* to do so. The word "may" confers upon the Board "discretion in the exercise of the power" to grant and refuse permits. *See State ex rel. Nixon v. Boone*, 927 S.W.2d 892, 897 (Mo.App.1996); *State v. Patterson*, 729 S.W.2d 226, 228 (Mo.App.1987). Had the legislature intended to require the Board to issue a permit once a firm made this threshold showing, it would have used the word "shall." *See Neske v. City of St. Louis*, 218 S.W.3d 417, 425 (Mo. banc 2007) (holding that "[g]enerally the use of the word 'shall' connotes a mandatory duty"). It follows, then, that the Board's

reliance on sections 326.310 and 326.280 as additional factors in the decision to issue the permit is not foreclosed.

Nor does the use of the word "notwithstanding" in section 326.289.4(1) bolster IFS's argument that the Board may not rely on sections 326.310 and 326.280. IFS's interpretation would reduce an applicant's burden to the simple requirement of showing that 51% of the ownership are licensed CPAs, ignoring a fundamental rule of statutory construction that the "provisions of a legislative act are not read in isolation but construed together." *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). The correct interpretation is that the use of the word "notwithstanding" was intended to avoid conflict with the law of professional corporations in chapter 356, specifically section 356.091, RSMo 2000, which states: "All of the directors of a professional corporation, and all of the officers of a professional corporation other than the secretary shall be qualified persons with respect to the professional corporation." In addition, section 356.111, RSMo 2000, provides:

1. A professional corporation may issue shares, fractional shares, rights or options to purchase shares, and other securities, only to the following:

. . . .

(4) Limited liability companies in which all of the members are licensed in one of the states or territories of the United States of American to practice a professional service permitted by the articles of incorporation of the professional corporation and in which at least one member is authorized by a licensing authority of this state to render in this state a professional service permitted by the articles of incorporation of the corporation. Because IFS is a limited liability company, section 356.111.1(4) would require *all* of its

members to be licensed to provide professional services, but the "notwithstanding" clause in section 326.289 serves to override section 356.111.1(4) so that only a majority of the members of a LLC of CPAs need be licensed.

This Court holds, therefore, that upon a finding that the threshold requirements of section 326.289 are met, the Board may also look, as it did in this case, to the fitness factors set forth in section 326.310, under which it is expressly granted discretion to refuse to issue a permit to an entity on *any* of the relevant grounds listed.

### B.

■ Though the AHC recognized the Board's discretion to deny a permit under 326.310.2, it nevertheless held that denial of the license was improper because the Board did not have statutory authority to impute Kossmeyer's actions to IFS unless those actions were taken on behalf of IFS. In that connection, the Commission further held that because the relevant conduct occurred prior to IFS's formation as a corporate entity, the Board could not consider it. This reasoning is flawed because a new firm applying for an initial permit has no history and, so, to require the Board to issue the permit, regardless of the background and character of the corporate owners, would frustrate the intent of section 326.310. Reading the statutes together, the authority of the Board to deny a permit under section 326.310 by imputing the past misconduct of the owners to the new firm is at least implicit, if not express. Kossmeyer is a convicted felon who has been found unfit to practice accountancy in the state of Missouri, and his conduct reflects no less poorly on the fitness of IFS as a public accountancy firm simply because it occurred before the entity's formation. *See Jerry-Russell Bliss, Inc. v. Hazardous Waste Mgmt. Comm'n,*

702 S.W.2d 77, 80 (Mo. banc 1985) (affirming denial of hazardous waste license to a new corporation based upon prior conduct of the owners, despite the fact that the conduct occurred prior to both the passage of the relevant statute and the incorporation of the applicant entity).

In addition, this analysis is unaffected by the fact that Kossmeyer does not hold a majority interest in the corporation. Although it is true that section 326.289 permits a CPA firm to be licensed so long as a simple majority of its owners are licensed CPAs, that section does nothing to diminish the Board's discretion to deny a firm permit based on any of the fitness factors in section 326.310 as they are applied to individual members of the firm.

### C.

■ IFS also maintains that the denial of the permit violated section 314.200, which states:

> No board or other agency created pursuant to laws of the state of Missouri, or by any city, county or other political subdivision of the state, for the purpose of licensing applicants for occupations and professions may deny a license to an applicant primarily upon the basis that a felony or misdemeanor conviction of the applicant precludes the applicant from demonstrating good moral character. . . . The board or agency may consider the conviction as some evidence of an absence of good moral character, but shall also consider the nature of the crime committed in relation to the license which the applicant seeks, the date of the conviction, the conduct of the applicant since the date of the conviction and other evidence as to the applicant's character.

IFS's contention is that "it is abundantly clear from the record that not only was Kossmeyer's criminal conviction in 1999 the primary reason for the denial of the IFS permit, it is the *only* reason the permit was denied." The record, however, shows otherwise. Although IFS is correct that section 314.200 prohibits professional licensing boards from denying a license on the basis of a criminal conviction alone, the Board's denial letter clearly specified that the grounds for the denial were not only the felony conviction, but also that Kossmeyer held himself out as a CPA in furtherance of his criminal activity, that the conviction resulted in revocation of his CPA license, and that the Board had serious concerns about the quality of Kossmeyer's moral character. The felony conviction, itself, was merely "some evidence of an absence of good character."

### D.

■ Finally, IFS argues that the Board is estopped from denying its application for a firm permit due to representations made by the Attorney General's office during Kossmeyer's revocation proceedings before the court of appeals. Judicial estoppel will lie to prevent litigants from taking a position, under oath, "in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits . . . at that time." *Shockley v. Dir., Div. of Child Support Enforcement,* 980 S.W.2d 173, 175 (Mo.App.1998). The representation in question is a statement in the Board's brief in Kossmeyer's revocation case, *Kossmeyer v. State Bd. of Accountancy,* 199 S.W.3d 778 (Mo.App.2006), that

> Kossmeyer is no doubt an educated and intelligent man capable of seeking employment, other than as a CPA. Unlike some other regulated professions, the law does not require a licensee to engage in all accounting functions. In

fact, a nonlicensee may even be an owner of a certified public accounting firm. Section 326.289.4(1), RSMo.

IFS alleges that this statement was an admission to Kossmeyer's qualification and right to participate in accounting activities as a minority owner of an accounting firm, contradictory to the Board's present position.

This point has no merit. The revocation of Kossmeyer's individual CPA license was based on Kossmeyer's criminal conduct and related considerations, and not on any theory that Kossmeyer might practice in the accounting profession under a firm permit. The Board merely stated that a non-licensee may be the owner of a certified accounting firm and did not purport to draw a legal conclusion that Kossmeyer himself could be such an owner or that IFS was entitled to a license.

*IV. Conclusion*

For the foregoing reasons, the judgment of the circuit court affirming the decision of the AHC is reversed.

All concur.