

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| CHRYL BROWN, | ) | No. ED107598 |
| | ) | |
| Petitioner/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| STATE BOARD OFACCOUNTANCY, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Respondent/Respondent. | ) | Filed:  August 27, 2019 |

## Introduction

Chryl Brown (Brown) appeals from the decision of the Missouri State Board of
Accountancy (Board) placing her license on probation for three years, as well as requiring her to
complete a supplementary ethics course and an increased yearly continuing professional
education (CPE) requirement.  We reverse and remand.

## Factual and Procedural Background

Brown holds a certificate and license to practice accountancy in Missouri.  In order to
renew her license, Brown is required to complete no less than 120 hours of CPE every three-year
period, with a minimum of 20 hours completed every year.  License holders are required to
maintain records of their CPE hours and must regularly submit those records to the Board as a
part of the license renewal.  License holders are also subject to audit by the Board of their
claimed CPE hours.  Should the Board contact a license holder and request a formal response,

they are required to respond to such communications by registered or certified mail within 30 days.

In 2011 Brown suffered a number of personal tragedies, including the unexpected deaths of family members. By the end of 2011, Brown had logged no CPE hours. Brown contacted the Board, explained her circumstances, and requested a waiver for her yearly CPE requirements for 2011, as well as a reduction in the CPE requirements from 2009-2011. In response, Samantha Green, an attorney representing the Board, sent a letter to Brown stating her CPE submission had been accepted for the 2009-2011 period and the matter had been closed. The letter stated Brown would be subject to another audit during the next reporting period.

In December 2014, Brown received a letter from Thomas DeGroodt, the executive director of the Board. This letter informed Brown her CPE submissions for the 2011-2013 period had also been accepted, and she met the Board's CPE requirements for that period.

In June 2015, Brown received another letter from Thomas DeGroodt. This letter stated the Board had opened a complaint against Brown because she failed an audit of her 2011, 2012, 2013, and 2014 CPE requirements. This letter also stated she had failed to respond to an earlier letter sent in May 2015. The Board's letter warned Brown she was to respond to the letter by July 16, 2015, or she would be in violation of Board rules. The record of this case contains a letter from Brown in response to the Board's June 2015 letter. This letter is dated July 16, 2015; however, nothing in the record indicates if or when the Board received it. In this letter, Brown states she failed to respond to the May 2015 letter from the Board because she set it aside and forgot about it. Brown also reminded the Board she had previously sent all the requested CPE information for the period in question, at which time the Board told Brown it was accepting her hours.

In February 2016, the Board filed a formal complaint against Brown with the Missouri Administrative Hearing Commission (AHC). This complaint alleged two rule violations by Brown. The first count alleged Brown had failed to complete her required CPE hours for 2011, 2012, and 2013. The complaint alleged Brown had filed zero hours in 2011, 23 hours in 2012, and 79 hours in 2013, for a total of 102 CPE hours for the period. The complaint claimed this made her deficient both for the minimum requirement of 2011 and the total requirement for that three-year period. The second count alleged Brown had violated Board rules by failing to respond to the letter sent by the Board in June 2015.

After receiving the complaint, the AHC attempted to serve notice on Brown at her last known address by certified mail. This attempt was unsuccessful, and the mail was returned as "unclaimed." In March 2016, the Board attempted to serve Brown personally via private process server. This too was unsuccessful. Finally, on the Board's motion, the AHC served notice on Brown via publication between July and September 2016. Brown never responded, and the Board motioned for a default decision, which was granted by the AHC in September 2016. Notice of the default decision was received by Brown that same month. Brown made no request the default be set aside, and it became final October 21, 2016.

After the default became final, Brown obtained counsel. The Board and Brown, through counsel, agreed on a date on which to hold a hearing to determine what, if any, discipline Brown should face. The disciplinary hearing was held in August 2017. Brown testified at the hearing and was allowed to introduce several exhibits into evidence. The exhibits included the above-mentioned letters Brown received from the Board informing her that her CPE deficiency from 2011 had been excused, and her CPE requirements were deemed acceptable for the 2009-2011 period as well as the 2011-2013 period. Brown testified she had received a letter in May 2015

3

warning her the previously excused CPE deficiencies were the subject of a possible Board complaint. Brown testified she had attempted to respond to the letter by calling Samantha Green, attorney for the Board, several times, but had not responded in writing as required. When asked why, Brown replied she attempted to resolve the matter informally because she believed it must have been a mistake, since the Board had already accepted her CPE hours. Brown testified she received the June 2015 letter from the Board on the same subject, and responded to this letter in writing.

After the disciplinary hearing, the Board took the matter under advisement. Thereafter, the Board issued its Disciplinary Order placing Brown's license to practice accountancy on probation for a period of three years, ordering her to take an ethics course, and increasing her yearly CPE requirements. The Disciplinary Order contained a section titled Findings of Fact. This section stated the Board found 1) the Board had authority to regulate and discipline licensed accountants, 2) Brown is a licensed accountant, 3) Brown received a default decision from the AHC, and 4) Brown appeared at the disciplinary hearing and presented evidence on her behalf. The Disciplinary Order made no specific mention of any of the evidence presented at the hearing or how it affected what discipline the Board imposed on Brown.

Brown appealed the Board's Disciplinary Order to the circuit court, which affirmed the Board's decision. This appeal follows.

Standard of Review

On appeal, we review the decision of the Board, not the circuit court. Tendai v. State Bd. of Reg. for Healing Arts, 161 S.W.3d 358, 365 (Mo. banc 2005). The standard of review is *de novo*. Id. "To the extent that [the] conclusions of law contain statements of fact or ultimate fact, the Court defers to the commission as fact finder if the conclusions are supported by competent

4

and substantial evidence when considering the record as a whole." Id.; see Section 536.140.2.[1]

No deference is given to the agency on questions of law. Gott v. Dir. of Revenue, 5 S.W.3d 155, 157 (Mo. banc 1999). Additionally, the agency's decision may not stand where it is in violation of constitutional provisions, in excess of statutory authority, is made upon unlawful procedure, or where it is arbitrary, capricious, unreasonable, or an abuse of discretion. Wilson v. City of St. Louis, 418 S.W.3d 501, 506 (Mo. App. E.D. 2013); see Section 536.140.2.

Discussion

The Board is a creature of statute created by the Missouri legislature to regulate licensed accountants within the state. State Bd. of Account. v. Integrated Fin. Solutions, 256 S.W.3d 48, 51 (Mo. banc 2008). Its purpose is "to protect the public by ensuring the integrity of the CPA profession." Id. The Board's ability to discipline members of the profession is defined in Section 326.310. Under the statute, if the Board wishes to discipline a license holder it must file a complaint with the AHC alleging they violated one of the enumerated provisions. Section 326.310.2. Upon the AHC finding cause for discipline, the Board has discretion to impose a penalty up to a statutory maximum of $2,000 per violation, up to five years of probation, or suspension of the offender's license to practice. Section 326.310.3. Brown was alleged to have violated Section 326.310.2 by not complying with lawfully adopted rules and regulations; specifically, 20 CSR 2010-4.010,[2] which requires a certain number of CPE hours over a given period, and 20 CSR 2010-3.060(7), which requires license holders to respond to written communications from the Board in writing sent by certified or registered mail.

On appeal, Brown raises several points of error, all related to the standard under which we review the Board's decision under Section 536.140. We do not analyze all the claims raised

---

[1] All statutory references are to RSMo 2016.
[2] All regulatory references are to Mo. Code Regs. (2010).

because we agree with Brown's second point: the Board abused its discretion in imposing the discipline it did.

The primary purpose of the Board's ability to discipline license holders is not to vindicate the Board's own dignity upon being defied, but to protect the members of the Missouri public from potential harm. Boyd v. State Bd. of Registration for Healing Arts, 916 S.W.2d 311, 317 (Mo. App. E.D. 1995). Thus, the discipline imposed must bear a rational relationship to that goal. Wasem v. Mo. Dental Bd., 405 S.W.2d 492, 497 (Mo. App. St.L. 1966). Brown argues imposing a period of probation on her was an abuse of the Board's discretion because the uncontroverted evidence at the evidentiary hearing showed she had been excused by the Board for her CPE requirements during the 2011-2013 period for which the complaint alleges she was deficient. An abuse of discretion occurs when the Board's decision "is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Shirrell v. Missouri Edison Co., 535 S.W.2d 446, 448 (Mo. banc 1976), quoting Anderson v. Robertson, 402 S.W.2d 589, 593 (Mo. App. St.L. 1966).

The Board counters with several related arguments. It argues that because Brown defaulted before the AHC, that default is *res judicata*, and Brown is unable to later present evidence that goes to the veracity of the allegations in the complaint. The Board claims the default decision gives it all the authority it needs to impose the discipline it did. The Board also points out the evidence Brown was allowed to present at the disciplinary hearing did not show she was in compliance with her CPE requirements for 2011-2013. Further, the Board characterizes the record at the disciplinary hearing as "partial," and insufficiently developed for review by this Court.

6

We disagree with the Board's arguments. It is true Brown did not present evidence she was in compliance during the 2011-2013 period. However, she did present uncontroverted evidence her noncompliance was due to a series of personal tragedies; that she had contacted the Board about these difficulties; and that the Board had waived her CPE requirements and accepted her CPE hours for 2011-2013, the same period for which it later filed the instant complaint. The Board has the authority under 20 CSR 2010-4.041(1)(B) to grant such a waiver. The Board's Disciplinary Order offers no insight why the Board rejected its previous position that Brown was excused from her CPE requirements for that period. The Disciplinary Order merely referenced the default decision Brown had received from the AHC and imposed discipline on Brown.

The Board argues against our consideration of Brown's evidence, claiming Brown's opportunity to present such evidence came and went with the AHC hearing, and *res judicata* bars its consideration at the disciplinary hearing or on appeal as an attempt to relitigate matters already settled. We do not share the Board's view. The statutes governing the complaint process create a bifurcated procedure. First, the Board files a complaint before the AHC, which determines whether cause to discipline the license holder exists; if such cause exists, a hearing is held before the Board itself to determine what level of discipline to impose. Sections 621.045 and 326.310; see also Peer v. Mo. Bd. of Pharmacy, 453 S.W.3d 798, 805 (Mo. App. W.D. 2014). It follows that the subject matter of the AHC hearing and the disciplinary hearing overlap substantially, such that evidence that is relevant at the AHC hearing to show *whether* discipline is appropriate might also be relevant to what, if any, discipline to impose.

Further, we note that while a license holder may default before the AHC, that default is not a final decision. Section 621.145 provides:

Except as otherwise provided by law, all final decisions of the administrative hearing commission shall be subject to judicial review as provided in and subject to the provisions of sections 536.100 to 536.140, except that in cases where a disciplinary order may be entered by the agency, *no decision of the administrative hearing commission shall be deemed final until such order is entered*. For purposes of review, the action of the commission and the order, if any, of the agency shall be treated as one decision. The right to judicial review as provided herein shall also be available to administrative agencies aggrieved by a final decision of the administrative hearing commission.

(emphasis added).

To draw a parallel, in bifurcated judicial proceedings the issue of liability may be decided in a separate proceeding, *e.g.,* via summary judgment, leaving damages to be determined in later proceedings. Stotts v. Progressive Classic Ins. Co., 118 S.W.3d 655, 661-62 (Mo. App. W.D. 2003). In such a procedure, the judgment resolving the first issue is interlocutory in character and not a final, appealable judgment because it necessarily "reserves or leaves some further question or direction for future determination." Norwine v. Norwine, 75 S.W.3d 340, 343 (Mo. App. S.D. 2002). Here, we may compare the issue of liability to Brown's default before the AHC, which established a legal basis for her discipline. The default AHC decision left for future determination the question of Brown's discipline, which, continuing the comparison, is like damages in a bifurcated civil case. Following this parallel, it is correct to say jurisdiction over the entire matter remained with the Board, and with them rested discretion to determine Brown's discipline in accordance with the AHC's determination of its grounds, even if such discipline amounted to naught; being functionally interlocutory, such a result does nothing to offend the force and effect of Brown's default before the AHC. See Truman Bank v. N.H. Ins. Co., 370 S.W.3d 675, 678-79 (Mo. App. E.D. 2012) ("The trial court remains free to add to, amend, or set aside its ruling at any time prior to final judgment... and thus partial summary judgment does not serve as a final resolution.").

8

Accordingly, we reject the Board's position that, because of the limited scope of the disciplinary hearing, we must view the record as being incomplete. Implied in this argument is the suggestion that the Board's failure to contest any of the mitigating evidence presented by Brown was due to that evidence being outside of the scope of the hearing. Admittedly, the circumstances of this case cause it to come before this Court in a unique position where the Board is both respondent and prior adjudicator of the matter. But in our view the Board may not admit mitigating evidence into the record, fail to contest it, and then on appeal complain it was outside of the scope of the proceedings over which it presided. Having allowed Brown to present evidence that she had been excused from the noncompliance alleged in the AHC complaint, the Board had an obligation to consider, or contest, such evidence before crafting her discipline. Restraining this Court from considering the evidence on the record would eviscerate the purpose of judicial review under Section 621.145.

The facts of this case are substantially similar to Gard v. State Bd. of Registration for the Healing Arts, 747 S.W.2d 726 (Mo. App. W.D. 1988). There, the state medical board filed a complaint before the AHC regarding a physician who had been convicted of a criminal offense and had his medical license revoked in a different state years earlier. Id. at 726-27. The AHC ruled in the medical board's favor and a disciplinary hearing was held. Id. at 727-28. At the disciplinary hearing, the physician presented substantial evidence of his rehabilitation in the intervening years. Id. at 728. The medical board nevertheless chose to impose a harsh penalty. Id. On appeal, the Western District reversed, noting it was apparent from the record the medical board had not considered the substantial mitigating evidence presented by the physician at the disciplinary hearing before imposing a harsh penalty, thereby abusing its discretion. Id. at 729-30.

9

Similarly, although here the Board was authorized by virtue of the default decision before the AHC to discipline Brown, it is clear from the record it failed to consider the mitigating evidence presented by Brown before doing so. When confronted at oral argument with the Board's letter accepting Brown's 2011-2013 CPE hours, the Board failed to account for why it later filed a complaint against Brown for that same period. Instead, the Board reiterated its position it had no burden to account for such discrepancy, as the time to have litigated such matters was before the AHC, where Brown defaulted. The Board's response supports our concerns it failed to consider this relevant mitigating evidence before disciplining Brown. The Board has wide discretion in choosing an appropriate sanction for noncompliance with its rules. At oral argument, the Board conceded it could have chosen to institute no discipline at all. Per Gard, we hold the Board's failure to consider relevant mitigating evidence before imposing discipline was an abuse of its discretion.

This leaves unsettled the matter of the second count of the Board's complaint: Brown's failure to respond to the Board's June 2015 letter by certified mail as required. At the disciplinary hearing, Brown testified she attempted to respond to the Board's communications by telephoning Samantha Green, attorney for the Board. The record also contains a letter from Brown responding to the Board's June 2015 letter; but there is no indication Brown's letter was sent by certified mail. At oral argument, Brown conceded her responses to the Board's communications were deficient, and accepts whatever sanction may result. Given the Board's mandate to discipline accountants only to the extent necessary to protect the Missouri public, this transgression itself is insufficient to uphold Brown's discipline. Accordingly, we reverse the Board's decision, and remand the matter for a determination of an appropriate sanction for Brown's failure to communicate as required by the Board's rules.

10

<u>Conclusion</u>

The decision is reversed and the case is remanded to the Board with directions to set aside Brown's discipline, and for further proceedings consistent with this opinion.[3]

SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.

---

[3] Appellant's Motion for Attorney's Fees is denied.