

# In the Missouri Court of Appeals
## Western District

AUSTIN WATTERSON,  )
                    Appellant,  )        WD83848
v.  )
                               )
JOSH WILSON, et al.,  )        FILED: August 3, 2021
                    Respondents.  )

## APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY
### THE HONORABLE WILLIAM B. COLLINS, JUDGE

### BEFORE DIVISION ONE: ALOK AHUJA, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

Austin Watterson appeals from the circuit court's grant of summary judgment against him in a civil lawsuit concerning ownership of a business. Watterson contends that the circuit court erred in granting summary judgment because the record contains genuine disputes of material facts. For reasons explained herein, we affirm the judgment in part and reverse in part.

### FACTUAL AND PROCEDURAL HISTORY

Sometime prior to July 2011, Watterson and Josh Wilson, along with a third party, Mike West, entered into an arrangement in which they worked together under the limited liability company ("LLC") Wilson Home Development ("WHD"). The terms of the arrangement are in dispute. Watterson contends he was a part

owner of WHD, while Wilson contends that Watterson was merely an employee. Watterson's name did not appear in WHD's articles of organization.

In May 2011, Watterson filed for bankruptcy under Chapter 7 of the United States Code. In his petition to the bankruptcy court, Watterson did not claim any ownership interest in an LLC. Watterson alleged that on August 1, 2011, he and Wilson met at Wilson's home to discuss their business relationship. Watterson alleged that, during this conversation, the pair orally agreed to start a new LLC which they would manage together, without West, as equal co-owners. Watterson further alleged that the pair agreed to split profits and losses equally and agreed that Wilson would manage the company's finances while Watterson would manage sales. The agreement was never reduced to writing. Articles of organization for Wilson Home Restoration ("WHR") were filed in December 2011, and listed Wilson as "the organizer.".

Wilson and Watterson worked together under WHR until 2014, when Wilson unilaterally terminated Watterson's relationship with the LLC. Watterson testified that, per their oral agreement, the two acted as equal co-owners of WHR while working together. Wilson admitted that, at least once while working together and in his presence, Watterson held himself out publicly as a co-owner, which Wilson never corrected at that time or any time thereafter. Additionally, the pair appeared as guests on a radio show, where Wilson admitted that he "heard or understood" that "perhaps . . . something on the radio may have alluded to" he

and Watterson acting as co-owners of WHR.  Wilson contends that Watterson was merely an employee.

Watterson filed suit against Wilson alleging he was wrongfully ousted from WHR without receiving the value of his ownership interest in the company.  After discovery, the circuit court granted Wilson's summary judgment motion on Watterson's claims of constructive trust, promissory estoppel, fraud, breach of contract, and quasi-contract and quantum meruit.  Watterson appeals.

## STANDARD OF REVIEW

"When considering appeals from summary judgments, [we] will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).  "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id*.  "We accord the non-movant the benefit of all reasonable inferences from the record." *Id*.  "Our review is essentially *de novo*." *Id*.

## ANALYSIS

We must first address whether judicial estoppel applies to preclude Watterson from alleging an interest in WHR.  Wilson argued judicial estoppel below, but the circuit court did not specify whether it granted summary judgment on the basis of judicial estoppel or on each of Watterson's claims individually.  Thus, we must discuss each in turn.  Watterson contends that judicial estoppel

3

does not preclude him from asserting ownership of WHR. "Judicial estoppel will lie to prevent litigants from taking a position, under oath, 'in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits . . . at that time.'" *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 140 (Mo. App. 2011) (quoting *State Bd. of Accountancy v. Integrated Fin. Solutions, L.L.C.*, 256 S.W.3d 48, 54 (Mo. banc 2008)). To determine if judicial estoppel applies, we consider the following factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*. "[U]nder United States Supreme Court precedent these factors are not fixed or inflexible prerequisites." *Id*.

The parties dispute whether Watterson's failure to claim an ownership interest in WHD and WHR during his prior bankruptcy proceeding precludes him from alleging the interest now. Watterson filed for bankruptcy in May 2011. He testified that he and Wilson agreed to become co-owners of the soon-to-be organized WHR in August 2011. Therefore, Watterson asserts that, when he filed his bankruptcy petition, he did not have any interest in WHR to disclose to the bankruptcy court. Further, Watterson filed under Chapter 7 of the United States

4

Code, which does not require parties to apprise the court of any property interests acquired after the filing date. *Harris v. Veigalahn*, 575 U.S. 510, 513-14 (2015).

Wilson argues that Watterson should have listed an interest in WHR because it was sufficiently rooted in the pre-bankruptcy past. Property acquired after filing the bankruptcy petition may still be property of the bankruptcy estate if an interest in that property was "sufficiently rooted in the pre-bankruptcy past." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966). Wilson first argues that WHR was a continuation of WHD and, therefore, was sufficiently rooted because WHD existed prior to Wilson's filing. This argument ignores that WHD and WHR are ultimately separate and distinct legal entities, and the summary judgment record does not indicate whether WHR merely continued WHD's business (in terms of its customers, employees, assets, or otherwise). To find a sufficiently rooted interest, courts consider whether a "readily discernible interest" existed at the time of filing. *In re Vote*, 276 F.3d 1024, 1026-27 (8th Cir. 2002). Here, without a more fully developed record, any interest that Watterson may have had in WHD prior to filing for bankruptcy does not demonstrate, standing alone, that a readily discernible interest also existed in the not-yet-organized WHR. Wilson also bases his contention on Watterson's testimony that his business relationship with Wilson and West began "a few months" before July 2011. The record reveals that Watterson's admission was related to the parties' working together as WHD and does not evince that he had an interest in WHR prior to filing.

Wilson also argues that the bankruptcy code requires all petitioners to list any reasonably anticipated increases in income or expenditures for the 12 months following the filing date. 11 U.S.C. § 501. He does not provide, nor do we find, law demonstrating that Wilson should have also necessarily included his ownership interest in WHR as a part of his alleged increase in income. Additionally, the record includes evidence that Watterson and Wilson agreed to reduced salaries in order to grow WHR. While Wilson argues that Watterson should have listed any *change* in income or expenditures, the plain language of the statute requires only that the debtor list an "increase" in income or expenditures. *Id.* Beyond agreeing to a reduced salary, the record also contains evidence that Watterson did not contribute cash capital to WHR, and Wilson does not point to any evidence, aside from Watterson's alleged interest in WHR, that Watterson should have expected his expenditures to increase either. Therefore, even if Watterson should have specifically included his ownership interest in WHR as part of disclosing an anticipated increase in income or expenditures, the record is insufficient to support summary judgment on whether Wilson should have anticipated an increase in income or expenditures in the first place.

The record does not demonstrate that Watterson was *required* to disclose to the bankruptcy court his alleged ownership interest in WHR. Therefore, we cannot consider his failure to disclose as a position clearly inconsistent with the allegations before us. If the circuit court granted summary judgment on the basis of judicial estoppel, it erred in doing so.

6

Watterson next contends that the circuit court erred in granting summary judgment on his six claims for relief because disputes over material facts remain on each claim. We will first address whether a dispute over a material fact common to all of Watterson's claims exists. To avoid summary judgment, Watterson must show evidence in the record that he had an ownership interest in WHR. Section 347.015(11)[1] defines an LLC member as:

> any person that signs in person or by an attorney in fact, *or otherwise is a party to the operating agreement at the time the limited liability company is formed* and is identified as a member in that operating agreement and any person who is subsequently admitted as a member in a limited liability company in accordance with sections 347.010 to 347.187 and the operating agreement, until such time as an event of withdrawal occurs with respect to such person.

(Emphasis added). Section 347.015(13) defines an operating agreement as:

> any valid agreement or agreements, written or oral, among all members, or written declaration by the sole member concerning the conduct of the business and affairs of the limited liability company and the relative rights, duties and obligations of the members and managers, if any.

Under the plain language of the statutes, if Watterson was a party to an oral operating agreement and identified as a member in that agreement at the time the LLC was formed, then he may indeed have ownership rights in WHR as a member. *See Birkenmeier v. Keller Biomedical LLC*, 312 S.W.3d 380, 390-91 (Mo. App. 2010). In *Birkenmeier*, the Eastern District of this court considered similar

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

7

facts. In that case, Birkenmeier was not named as a member in the LLC's articles of organization. *Id.* at 385. Nevertheless, he alleged that he and the organizing member had reached an oral agreement in which he would own five percent of the LLC. *Id.* The Eastern District ultimately affirmed the grant of summary judgment against Birkenmeier on the ground that the uncontroverted facts demonstrated that the parties had never agreed on some of the core operations of the LLC and additional members. *Id.* at 390-91. Rather, the uncontroverted evidence revealed that the parties left the terms open to future discussion, which showed that they never reached an agreement as required by Section 347.015(13). *Id.*

Here, Watterson testified to specific facts indicating that he and Wilson had a conversation on August 1, 2011. During that conversation, Watterson testified that the pair agreed to become 50/50 partners of WHR, agreed to share profits and losses, agreed that Wilson would handle the LLC's finances while Watterson would manage sales, and agreed that the two would share in decision-making authority. Such facts, if true, amounted to an oral agreement concerning the operation of WHR and outlining the relative rights and duties of the members, which would render it a valid operating agreement under the statute. Further, because Watterson was a party to the alleged agreement and was identified as a part-owner in the agreement, he would qualify as a member of the LLC under the statute even though not included in the articles of organization. *See id.* Consequently, because Watterson testified that such an agreement took place, but

8

Wilson testified otherwise, the oral agreement's existence is a question of material fact in dispute.

Wilson argues that we ought to ignore Watterson's "self-serving" testimony and affidavit. While generalized self-serving allegations are not sufficient to defeat summary judgment, specific testimony based on the affiant's personal knowledge suffices. *See Stanbrough v. Vitek Solutions, Inc.*, 445 S.W.3d 90, 99-100 (Mo. App. 2014). Here, Watterson does not generally allege that an agreement existed; rather, based on personal knowledge he testified that on a specific date, at a specific location, and during a specific conversation, he and Wilson came to specific terms as to how they would operate WHR as co-owners. This testimony suffices to demonstrate a dispute over whether an agreement making Watterson a co-owner actually existed. *See id.* The finder of fact must resolve that dispute.

Moreover, Section 347.037.1 does not require that an LLC's organizer, who signs and files the articles of organization, must be member or manager of the LLC. Wilson argues that because Watterson does not appear as an "organizer" in WHR's articles of organization, he cannot be a member. The plain language of Section 347.037.1 refutes that argument, however. WHR's articles of organization lists only "each organizer," who need not be members or managers of the organization. Therefore, the organizer's names, or lack thereof, in WHR's articles of organization do not conclusively evince *any* membership interest in WHR—

9

Watterson's *or Wilson's*. Consequently, WHR's articles of organization do not refute the alleged oral agreement between the parties.

We next consider each of Watterson's six claims to determine if he successfully precluded summary judgment. Watterson seeks relief under theories of: (1) constructive trust, (2) promissory estoppel, (3) fraud, (4) breach of contract, (5) quasi-contract, and (6) quantum merit. For each claim, he contends that the record contains evidence supporting the elements and creating disputes of material fact sufficient to defeat summary judgment.

A constructive trust may be imposed when a person "has acquired property under such circumstances as make it inequitable for him to retain it." *Brown v. Brown*, 152 S.W.3d 911, 916 (Mo. App. 2005). Wilson bases his argument in support of summary judgment on the grounds that Watterson did not sign the articles of organization and, therefore, received appropriate pay and severance as an employee. Having determined that the existence of an agreement creating ownership rights remains a material fact in dispute, this argument has no merit. If an oral operating agreement making Watterson a member existed, then his ouster from WHR without compensation for his portion of the LLC would amount to an inequitable retention by Wilson of Watterson's property. Thus, the court erred in granting summary judgment on Watterson's constructive trust claim, and we reverse.

Promissory estoppel has four elements: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should

10

have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 591 (Mo. banc 2007). We find that summary judgment was appropriate as to promissory estoppel because Watterson has failed to demonstrate that only enforcement of the promise could cure the detriment of his reliance. The Eastern District again considered a similar claim in *Birkenmeier*, where it found summary judgment appropriate on a promissory estoppel claim because Birkenmeier did not specifically seek reinstatement as an owner of the LLC. *Birkenmeier*, 312 S.W.3d at 389. Instead of seeking specific performance of the promise, Birkenmeier sought damages for his ouster, which demonstrated that other remedies at law were available to him. *Id.* We agree with the Eastern District's analysis. The record indicates that, for promissory estoppel, Watterson sought "an amount which will fairly and reasonably compensates (sic) [him]," indicating that he did not specifically seek to renew his ownership rights through promissory estoppel but instead sought damages compensating him for Wilson's denial of those rights. Therefore, as in *Birkenmeier*, another remedy exists at law, and the circuit court did not err in granting summary judgment on Watterson's promissory estoppel claim.

Watterson next contends the circuit court erred in granting summary judgment on his claim for fraud. A viable claim for fraud requires: "a representation; that is false; that is material; the knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of

11

the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury." *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Wilson argues that Watterson failed to plead fraud with the particularity that Rule 55.15 requires. Wilson does not support his conclusory contention with reference to a specific deficiency or with any additional law or argument, and we find no Rule 55.15 deficiencies in the petition.

Beyond the already rejected contention that Watterson failed to show a dispute of material fact as to his ownership rights in WHR, Wilson contends that Watterson cannot demonstrate that he did not know he would never own part of WHR. He bases that contention on Watterson's knowledge that his name was not on the articles of organization and Wilson's fear that Watterson bore no liability until his name was added in writing. As discussed above, Watterson's name not appearing on WHR documents is not dispositive of his ownership interest. Further, the lack of writing and Wilson's uninformed fears do not demonstrate Watterson's belief that he was never an owner. Watterson testified that, although his name was not on the articles of organization, he sought to have his name amended to the articles of organization *because* of his beliefs that he was already an owner, that he already bore liability, and that formally adding his name would ease Wilson's mind. The belief that he was an owner is also supported in the record by the uncontroverted fact that he was publicly held out as an owner while in Wilson's presence, which Wilson did nothing to refute publicly or privately.

12

Watterson also sufficiently supports his reliance on Wilson's promise through his testimony that he left his job at "K2" and agreed to work with Wilson at a "lower" salary for the sake of growing the business in which he thought he had an interest. Finally, Wilson argues that Watterson cannot demonstrate that his reliance on Wilson's promise led to a detriment because he received pay and severance for his work. This argument ignores that Watterson testified that he took a lower salary than normal in reliance on Wilson's promise and that he would also be entitled to a portion of WHR's value, which he testified to have never received, if the promise that he was an owner was true. We find that Watterson further supports the remaining elements for fraud with evidence on the record which Wilson does not contest in his arguments or brief. Consequently, we find summary judgment inappropriate on Watterson's fraud claim, and we reverse.

Watterson next contends that the circuit court erred in granting summary judgment on his breach of contract claim. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Rissler v. Heinzler*, 316 S.W.3d 533, 536 (Mo. App. 2010) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)). Watterson's testimony that he entered into an oral agreement with Wilson and that he was ousted without receiving adequate value for his ownership interest precludes summary judgment

13

on this claim.  Additionally, the record contains evidence that Watterson fulfilled his obligations under the agreement through several years of work and aiding in the decision making at WHR.  Lastly, Watterson provides evidence of damage from the breach in that he was unilaterally ousted from WHR without receiving value for his share of the business.

Wilson argues that summary judgment was appropriate because Watterson cannot demonstrate the mutuality of the agreement.  Watterson's testimony about the pair's August conversation, however, indicated a mutual agreement and suffices to raise a dispute of material fact.  Wilson further argues that Watterson chose not to become a "legal owner" by electing not to appear in the articles of organization.  As discussed above, WHR's articles of organization, read under Section 347.037.1, do not speak to *any* membership interests, including Wilson's.  In the light most favorable to the non-moving party, Watterson's choosing omission from the articles of organization does not necessitate the inference that he forwent all ownership interests at that time; rather, it creates the plausible inference, to which Watterson testified, that he merely intended to keep his orally agreed upon interest undisclosed under the uninformed belief that his ongoing bankruptcy could negatively affect the business.  However questionable the motives of that decision may be, Watterson's testimony provides a clear dispute of material fact as to whether the parties formed a viable contract.  We find that Watterson successfully precluded summary judgment on each element of his

14

breach of contract claim. The circuit court erred in granting summary judgment on Watterson's breach of contract claim, and we therefore reverse.

Finally, the circuit court did not err in granting summary judgment on Watterson's quasi-contract and quantum meruit claims. "The essential elements of quasi-contract are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable." *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. 2010) (internal quotation marks and citations omitted)). Quantum meruit is a theory of relief under a quasi-contract claim. *Holliday invs., Inc., v. Hawthorn Bank*, 476 S.W.3d 291, 296 (Mo. App. 2015). "For a quasi-contract based upon quantum meruit, recovery is based upon the reasonable value of the goods or services furnished to the defendant." *Id*. "To recover under quantum meruit, it is the plaintiff's burden to show that its services benefited the defendant." *Miller v. Horn*, 254 S.W.3d 920, 925 (Mo. App. 2008). "The plaintiff must also show the *amount* of the benefit." *Id*.

> This may be accomplished by showing proof of the reasonable value of the services performed. Reasonable value is the price customarily paid for such services at the time and locality in question. *Proof of reasonable value is not accomplished simply by reciting the bill or referring to the contract*, or stating the "standard price" that plaintiff usually would charge for such service.

*Id*. (internal citations omitted) (emphasis added). Watterson bases his quasi-contract and quantum meruit claims on the value of his labor and the value of a

15

vehicle allegedly contributed to WHR.  He concludes that Wilson did not pay him adequate value upon termination but does not point to any evidence in the record, aside from the alleged agreement, demonstrating what constitutes sufficient value or how the wages and severance that Wilson paid him were insufficient.  Because Watterson cannot support the final element of his quasi-contract and quantum meruit claims with evidence in the record, summary judgment was appropriate on those claims.

## CONCLUSION

We find that Wilson was not entitled to summary judgment on the basis of judicial estoppel.  We affirm the court's grant of summary judgment on Watterson's claims of promissory estoppel, quasi-contract, and quantum meruit. We reverse the court's grant of summary judgment on Watterson's claims of constructive trust, fraud, and breach of contract.  The cause is remanded to the circuit court for further proceedings consistent with this opinion.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

16